COMMONWEALTH *vs.* RALPH M. DURLING.

Norfolk. January 10, 1990. - March 26, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Probation. *Due Process of Law*, Probation revocation. *Evidence*, Hearsay.

Discussion of the practice of placing criminal defendants on probation and of the requirements of due process, when probation is revoked for violation of its conditions. [111-114]

The use of hearsay evidence at probation revocation hearings is not per se prohibited by Federal or State due process guarantees. [114-115]

Discussion of the respective interests of a probationer and of the Commonwealth in a probation revocation proceeding. [115-116]

At a probation revocation hearing in which the Commonwealth seeks to rely on hearsay evidence, the judge must balance, in the circumstances of the case, the defendant's due process right to confront and cross-examine witnesses against the Commonwealth's "good cause" for not presenting a witness; where the proffered evidence bears substantial indicia of reliability, its use in the proceeding is not prohibited by due process principles. [116-119]

In the circumstances of a probation revocation hearing, certain hearsay police reports, offered by the Commonwealth for the truth of what they asserted, i.e., that the defendant had committed other offenses while on probation, were shown to be reliable so that denial of the defendant's limited right to confront witnesses with personal knowledge did not violate the defendant's due process guarantees [120-122]; and that evidence was sufficient for the judge to revoke the defendant's probation [122].

COMPLAINTS received and sworn to in the Stoughton Division of the District Court Department on September 17, 1986, and October 27, 1986, respectively.

A proceeding for revocation of probation was heard by *Robert B. Sheiber*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Anthony M. Traini* for the defendant.

*James F. Lang*, Assistant District Attorney, for the
Commonwealth.

NOLAN, J. Ralph M. Durling (defendant) appeals from an
order of a District Court judge revoking the defendant's pro-
bation and committing him to a house of correction. The de-
fendant contends that the procedure utilized at the revoca-
tion hearing failed to comport with the minimum
requirements of the due process clause of the Fourteenth
Amendment to the United States Constitution. We affirm.

The defendant's story begins on September 16, 1986, when
he was arrested in Stoughton. The defendant was arraigned
the following day on charges of operating a motor vehicle
while under the influence of alcohol (OUI) and leaving the
scene of an accident after causing property damage. Before
the trial date on those charges, the defendant again was ar-
rested for combining alcohol consumption and operating a
motor vehicle. On October 27, 1986, the defendant was ar-
raigned on charges of, among other things, OUI and leaving
the scene of an accident after causing personal injury.

On June 30, 1987, a District Court judge consolidated the
defendant's cases. Findings of guilty were entered against the
defendant on the four charges above mentioned. On each
charge, the defendant was sentenced to two years in the
house of correction with all the sentences to run concur-
rently. The court, however, suspended all but the first ninety
days of the sentences. The defendant was placed on proba-
tion until June 29, 1989. The defendant signed a form which
listed the conditions of his probation and these included the
condition that the defendant obey local, State and Federal
laws and court orders.[1]

---

[1]The complete list of conditions imposed on the defendant is as follows:

"(1) You must obey local, state or federal laws or court orders.

"(2) You must report to your assigned probation officer at such time
and place as he/she requires.

   In May of 1988, while he was still on probation, the defendant was given a "Notice of Surrender and Hearing(s) For Alleged Violation(s) of Probation." According to the Commonwealth, the defendant was arrested on April 8, 1988, and again on May 12, 1988. Both times he was charged with operating a motor vehicle while under the influence of alcohol, among other violations. A probation revocation hearing was held on October 5, 1988. At that hearing, the defendant's probation officer read to the court the two police reports relating to the arrests of April 8 and May 12. Counsel for the defendant attempted to cross-examine the probation officer, but abandoned his effort when he established that the probation officer had no personal knowledge of the events recounted in the two police reports. The judge, on the strength of the probation officer's testimony, determined that the defendant had violated the conditions of his probation by violating State laws. The judge revoked the defendant's probation, and ordered that the defendant be committed to the house of correction for nine months, with the balance of the sentence (one year) to remain suspended. The judge stayed execution of the sentence, giving the defendant an opportunity to appeal. Rather than filing a notice of appeal, the defendant sought extraordinary relief from a single justice of this court pursuant to G. L. c. 211, § 3. The single justice denied relief on the ground that the defendant could appeal from the revocation order and thus had an adequate remedy available to him. In denying relief, the single justice commented that absent a finding of "good cause to deny the defendant his right to confront and cross-examine the arrest-

   "(3) You must notify the probation officer immediately of a change of residence or employment.

   "(4) You must not leave the Commonwealth without the express permission of the probation officer. Such permission may be conditioned upon your agreement to waive extradition.

   "(5) Recommend alcohol treatment at MCI Braintree or Longwood plus follow up.

   "(6) Stay execution of sentence 7-6-87 VWF waived.

   "(7) Report to Stoughton Dist. Ct. probation within one week of release from jail."

ing officer[,] [c]ross-examination of the probation officer was not adequate to meet due process requirements." The single justice added that the District Court judge might wish to reconsider his ruling. Accordingly, the defendant filed a motion to reconsider the revocation ruling in the District Court. The District Court judge denied the motion to reconsider but stayed execution of the defendant's sentence until the legal issues were resolved on appeal. The defendant then appealed from the order revoking probation and the denial of the motion to reconsider. We transferred the appeal to this court on our own motion.

The practice of placing defendants on probation can be traced to early Massachusetts common law. See *Buckley* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 815, 817 n.2 (1985). Today, both probation and the suspension of sentences are governed by statute. See G. L. c. 279, § 1-2 (power to suspend sentences and place defendants on probation); G. L. c. 276, § 87 (power of District Courts to place defendants on probation). Probation, whether "straight" or coupled with a suspended sentence, is a legal disposition which allows a criminal offender to remain in the community subject to certain conditions and under the supervision of the court. See Diana, What Is Probation, 51 J. Crim. L. & Criminology 189 (1960) (discussing various aspects of probation, including rehabilitative, administrative, punitive, and legal aspects).

A defendant on probation is subject to a number of conditions, the breach of any one of which constitutes a violation of his probation. When a violation is alleged, the probation officer "surrenders" the defendant to the court, subjecting the defendant to possible revocation of his probation. At the revocation hearing, the judge must determine, as a factual matter, whether the defendant has violated the conditions of his probation. If the judge determines that the defendant is in violation, he can either revoke the probation and sentence the defendant or, if appropriate, modify the terms of his probation. How best to deal with the probationer is within the judge's discretion. *McHoul* v. *Commonwealth*, 365 Mass.

465, 469-470 (1974). *Commonwealth* v. *McGovern*, 183 Mass. 238, 240-241 (1903).

"Any conduct by a person on probation which constitutes a violation of any of the conditions of his probation may form the basis for the revocation of that probation. Such conduct may involve the violation of criminal laws, but there is no prerequisite that the probationer be convicted thereof to permit the violation to be used as the basis for the revocation." *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976). In this case, the Commonwealth alleges that the defendant violated the conditions of his probation by twice violating State laws. The defendant has not been convicted of the crimes alleged. The District Court judge, therefore, had to determine, as a factual matter, that the defendant indeed violated the law. The issue is whether the District Court judge, in making that determination, could constitutionally rely upon the evidence presented by the Commonwealth.

Revocation hearings are not part of a criminal prosecution. *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 (1973). Thus, a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial. *Id.* The revocation of probation does, however, result in a deprivation of liberty within the meaning of the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.* The due process clause, therefore, requires that the Commonwealth provide probationers with certain protections at surrender hearings. *Id.*[2]

In *Gagnon, supra,* the Supreme Court relied heavily on *Morrissey* v. *Brewer,* 408 U.S. 471 (1972). In *Morrissey,* the Court determined that due process principles applied to pa-

---

[2]The Supreme Court's early cases are ambivalent on whether a probationer's liberty interest rises to the level of a constitutionally protected interest. In *Escoe* v. *Zerbst,* 295 U.S. 490, 492-493 (1935), the Court held that a probationer had the "privilege" of a hearing before his probation was revoked, but added that it did "not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute." See *Burns* v. *United States,* 287 U.S. 216, 223 (1932) (probation is a "matter of grace," but probationer entitled to "fair treatment").

role revocation hearings. *Morrissey* and *Gagnon* establish
that the minimum requirements of due process include " '(a)
written notice of the claimed violations of [probation or] pa-
role; (b) disclosure to the [probationer or] parolee of the evi-
dence against him; (c) opportunity to be heard in person and
to present witnesses and documentary evidence; (d) the right
to confront and cross-examine adverse witnesses (unless the
hearing officer specifically finds good cause for not allowing
confrontation); (e) a 'neutral and detached' hearing body
such as a traditional parole board, members of which need
not be judicial officers or lawyers; and (f) a written statement
by the factfinders as to the evidence relied on and reasons for
revoking [probation or] parole.' *Morrissey* v. *Brewer, supra*
at 489." *Gagnon* v. *Scarpelli, supra* at 786.

Due process, by its nature, is a flexible concept. The re-
quirements of due process in a particular case are deter-
mined by reference to the definition and weight of the com-
peting interests involved in that case. *Lotto* v. *Common-
wealth*, 369 Mass. 775, 780 (1976). "[D]ue process is not so
rigid as to require that the significant interests in informality,
flexibility, and economy must always be sacrificed." *Gagnon*
v. *Scarpelli, supra* at 788. It is in keeping with these funda-
mental properties of due process that the *Morrissey* Court,
and by extension the *Gagnon* Court, emphasized that it did
not intend to "write a code of procedure." *Morrissey* v.
*Brewer, supra* at 488. Our cases have recognized the flexibil-
ity of the *Morrissey-Gagnon* guidelines. See, e.g., *Common-
wealth* v *Odoardi*, 397 Mass. 28, 34 (1986) (within judge's
discretion to curtail cross-examination when probationer's
subsequent conviction is a matter of record); *Fay* v. *Com-
monwealth*, 379 Mass. 498, 504-505 (1980) (judge's oral
recitation of reasons for revocation, when transcribed, satis-
fies requirement of written statement by fact finder);
*Stefanik* v. *State Board of Parole*, 372 Mass. 726 (1977) (no
requirement of a preliminary hearing where defendant al-
ready received probable cause hearing and had been bound
over to grand jury). We adhere to the principle that the re-
quirements of due process are flexible. While *Morrissey* and

*Gagnon* identify the components which make up a scheme satisfying due process, the requirements of due process depend on the circumstances of each case and an analysis of the various interests at stake.

The defendant relies on requirement (d) in the *Morrissey-Gagnon* enumeration of due process protections. In (d), the Court identified "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey* v. *Brewer, supra* at 489. The defendant argues that the procedure utilized in this case of having the probation officer read the police reports violates that right. The probation officer, although subject to cross-examination, had no personal knowledge of the events upon which the revocation was based. The police reports were mere hearsay and their content could not be subject to cross-examination.

In this case we are squarely presented with the questions (1) whether hearsay may be utilized in probation revocation hearings; and (2) if so, when and to what extent. The first question, in our view, is easily resolved. The second requires careful consideration.

This court has always allowed the use of hearsay at probation revocation hearings. See *Brown, petitioner,* 395 Mass. 1006, 1007 (1985) (although bulk of hearsay was insufficient, no contention that it was improper). Two overriding principles identified by this court are that revocation proceedings must be flexible in nature, see *Buckley* v. *Quincy Div. of the Dist. Court Dep't,* 395 Mass. 815, 818 and n.3 (1985), and that all reliable evidence should be considered, see *Commonwealth* v. *Vincente,* 405 Mass. 278, 280 (1989). Both of these principles are furthered by not imposing strict evidentiary rules on probation revocation hearings and by allowing the use of reliable hearsay.

In *Morrissey* v. *Brewer, supra* at 489, the Supreme Court stated that the revocation "process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." To clarify, in *Gagnon* v. *Scarpelli, supra* at 783

n.5, the Court stated that "we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." In view of the established practice in this Commonwealth and these express pronouncements by the United States Supreme Court, we think that the due process clause does not place a per se prohibition on the use of hearsay evidence at probation revocation hearings.

The more difficult issue, and in this case the decisive issue, is when and to what extent a court may rely on hearsay in revoking probation. The judge in this case relied solely on hearsay in revoking the defendant's probation. The judge did not make any express determination that there was good cause for denying the defendant the right to confront a witness with personal knowledge. Nor did the judge make any determination whether the proffered hearsay was reliable.

The *Gagnon* Court expressly conditioned the probationer's right to confrontation by adding that the right could be denied if the "hearing officer specifically finds good cause for not allowing confrontation." *Gagnon* v. *Scarpelli, supra* at 786. In doing so, the Supreme Court established that the probationer's right of confrontation is far from absolute. In determining when "good cause" exists, such that the right to confrontation may be denied, we focus on the principles that pervade all due process questions. We must carefully define the various interests involved and balance those interests according to the weight society places on them.

The probationer has a liberty interest at stake in the revocation proceeding. He has been given the opportunity to rehabilitate himself and he has an interest in not being deprived of that opportunity arbitrarily. But the probationer's liberty interest is conditional. It was given to him as a matter of grace when the State had the right to imprison him. If the probationer has violated the conditions imposed upon him, his liberty can be taken away.

The Commonwealth's interests are several. A convicted criminal who is not complying with the conditions of his probation poses an obvious threat to the public welfare. The

Commonwealth has an interest in expeditiously dealing with such a threat. One of the primary purposes of probation is to rehabilitate the offender. An offender who continues to violate the law is obviously not being rehabilitated. The Commonwealth has an interest in imposing effective punishment on a convicted criminal when rehabilitation is not possible. When an individual is on probation, the Commonwealth has already gone through the expense and effort of convicting him. The Commonwealth has a strong interest in being able to revoke probation in appropriate cases without having to repeat its effort. We recently had the opportunity to note that the Commonwealth also has an "overwhelming" interest in using all reliable evidence in revocation proceedings. See *Commonwealth* v. *Olsen,* 405 Mass. 491, 496 (1989); *Commonwealth* v. *Vincente,* 405 Mass. 278, 280 (1989). Finally, we are well aware of the crowded dockets and the limited resources of the trial courts. The burden of requiring extensive, fact-intensive hearings is a heavy one. Thus, the Commonwealth has an interest in maintaining administrative efficiency and reducing costs.

The interests of the probationer and the Commonwealth cross at one point: both have an interest in a reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation. The Supreme Court recognized this when it noted that "fair treatment in [probation] revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Morrissey* v. *Brewer, supra* at 484. Both society and the probationer benefit when the probationer is rehabilitated. Society only benefits from a revocation when there is an accurate and reliable ground upon which that revocation is based.

Balancing the various interests involved, we arrive at the conclusion that the requirements of the due process clause have, at their base, the goal of providing an accurate determination whether revocation is proper. Normally, the best source of information for such a determination is the testimony of one or more persons who have personal knowledge of the facts which the Commonwealth alleges constitute a vi-

olation. Such testimony can be tested by cross-examination. This is what the *Morrissey* and *Gagnon* Courts intended when they recognized the conditional right of confrontation.[3]

But presenting a witness with personal knowledge is not always possible. Indeed, it is often unrealistic. In this case the defendant's revocation hearing was before a District Court in Norfolk County. The defendant's subsequent arrests were in Taunton and Easton, both in Bristol County. The burden of requiring police officers to travel to other parts of the State for revocation hearings would fall heavily not only on the officers but also on their local communities which would lose their services for a significant period of time.[4] In addition, the burden of scheduling the hearing at a time convenient to the witnesses, the defendant, the court, and the attorneys would fall on the individual probation officers.[5] Thus, there are often valid reasons for not presenting live witnesses. This is what the *Morrissey* and *Gagnon* Courts recognized when they noted that the hearing officer could deny confrontation rights for "good cause." *Gagnon* v. *Scarpelli*, *supra* at 786.

In situations where the Commonwealth seeks to rely on evidence not subject to cross-examination, the due process touchstone of an accurate and reliable determination still remains. The proper focus of inquiry in such situations is the reliability of the evidence presented. Even though standard evidentiary rules do not apply to probation revocation hearings, the first step is to determine whether the evidence

---

[3]A probation revocation hearing should not be a miniature trial. "It is a narrow inquiry." *Morrissey*, *supra* at 489. Thus, even where a witness is present and cross-examination is permitted, the scope of the permissible inquiry is limited to the factors which would justify a revocation.

[4]A more compelling example is in a rape case. Often the only witness with personal knowledge of the crime is the victim. The trauma of testifying at probable cause hearings, before the grand jury, and at trial is onerous enough for such a victim. Society has an interest in not adding probation revocation hearings to that list.

[5]Apparently, the common practice is for the probation officer to present personally the case for revocation. Generally, the district attorney is not involved. That practice was followed in this case.

would be admissible under those rules, including the excep-
tions to the hearsay rule. Evidence which would be admissi-
ble under standard evidentiary rules is presumptively relia-
ble. Cf. *Ohio* v. *Roberts*, 448 U.S. 56, 66 (1980) (reliability
can be inferred without more in a case where the evidence
falls within a firmly rooted hearsay exception). If the prof-
fered evidence is not admissible under standard evidentiary
rules, then a court must independently look to the reliability
of that evidence. Unsubstantiated and unreliable hearsay
cannot, consistent with due process, be the entire basis of a
probation revocation. When hearsay evidence *is* reliable,
however, then it *can* be the basis of a revocation. In our view,
a showing that the proffered evidence bears substantial indi-
cia of reliability and is substantially trustworthy is a showing
of good cause obviating the need for confrontation. We agree
with the observation of the United States Court of Appeals
for the Seventh Circuit on this point that "if the proffered
evidence itself bears substantial guarantees of trustworthi-
ness, then the need to show good cause vanishes." *Egerstaffer*
v. *Israel*, 726 F.2d 1231, 1234 (7th Cir. 1984).[6] We caution,
however, that when hearsay is offered as the only evidence of
the alleged violation, the indicia of reliability must be sub-
stantial (see *Brown* v. *State*, 317 Md. 417, 425-426 [1989])
because the probationer's interest in cross-examining the ac-
tual source (and hence testing its reliability) is greater when
the hearsay is the only evidence offered. Thus, the hearsay
must be substantially reliable to overcome that interest.

On the whole, the resolution of the confrontation issue de-
pends on the totality of the circumstances in each case. The
court must balance the defendant's due process right to con-
front and cross-examine witnesses against the Common-
wealth's reasons for not presenting witnesses. If the Com-
monwealth has "good cause" for not using a witness with
personal knowledge, and instead offers reliable hearsay or

---

[6]We do not mean to suggest that any of the evidence which we conclude
the court may rely on is conclusive. As always, the court must weigh all
the evidence and make a principled decision.

other evidence, then the requirements of due process are satisfied. The Supreme Court noted in *Gagnon, supra* at 783 n.5, that "in some cases there is simply no adequate alternative to live testimony." But in other cases, there clearly will be adequate alternatives, and those alternatives are not prohibited by the due process clause.

Other courts addressing this issue have approached it in a similar fashion. The Supreme Court of Washington has emphasized that the *Morrissey-Gagnon* right to confrontation depends on the circumstances of each case. *State* v. *Nelson,* 103 Wash. 2d 760 (1985). In *Nelson,* the State presented only written reports from the personnel of a hospital where the probationer was undergoing treatment. *Id.* at 762. The Supreme Court affirmed the revocation, ruling that the hearsay was reliable because it was corroborated, in part, by some of the evidence presented by the probationer in opposition to the motion for revocation. *Id.* at 765. The court also noted the "expense and difficulty in requiring a mental health therapist to testify in person at every probation hearing." *Id.*

Resting on the reliability of the hearsay involved, the California Supreme Court affirmed a revocation of probation where the substantive evidence was pure hearsay. *People* v. *Maki,* 39 Cal. 3d 707 (1985). The California court determined that the hearsay was clearly reliable and that, in the circumstances, the defendant's *Morrissey-Gagnon* rights were not infringed. *Id.* at 714-717. Accord *State* v. *Belcher,* 111 Ariz. 580, 581-582 (1975) (probation revoked where hearsay was clearly reliable); *State* v. *Reyes,* 207 N.J. Super. 126, 138-140 (1986) (no constitutional bar to admission and consideration of demonstrably reliable hearsay). What these and other courts have relied upon is the concept we have announced today: that the extent of the probationer's due process right to confrontation is determined by the totality of the circumstances present in each case. The Washington Supreme Court expressly noted the nature of the applicable test. *State* v. *Nelson, supra* at 765. The court said that "[t]he current test is a balancing one in which the proba-

tioner's right to confront and cross-examine witnesses is balanced against any good cause for not allowing confrontation. Good cause has thus far been defined in terms of difficulty and expense of procuring witnesses in combination with 'demonstrably reliable' or 'clearly reliable' evidence." *Id.* A number of courts addressing the issue agree that the defendant's right to confront witnesses depends on a balancing of the various interests involved. See, e.g., *Goforth* v. *State*, 27 Ark. App. 150 (1989); *Brown* v. *State*, 317 Md. 417 (1989); *Anaya* v. *State*, 96 Nev. 119 (1980); *State* v. *Reyes*, 207 N.J. Super. 126 (1986).

The Federal courts which have addressed the due process rights of probationers in the wake of *Morrissey* and *Gagnon* are generally in accord with our reasoning today. Indeed, many of the Federal cases support the proposition that clearly reliable hearsay alone is a sufficient basis upon which to revoke probation. See *United States* v. *Simmons*, 812 F.2d 561, 564-565 (9th Cir. 1987); *Egerstaffer* v. *Israel*, 726 F.2d 1231, 1234 (7th Cir. 1984); *United States* v. *Penn*, 721 F.2d 762, 764-766 (11th Cir. 1983); *United States* v. *McCallum*, 677 F.2d 1024, 1026 (4th Cir.), cert. denied, 459 U.S. 1010 (1982); *United States* v. *Burkhalter*, 588 F.2d 604, 607 (8th Cir. 1978).

We turn now to the case before us. The evidence presented by the probation officer consisted of out-of-court declarations by police officers. The declarations were offered for the truth of what they asserted and, quite clearly, were hearsay. Nevertheless, we are convinced that the proffered evidence was imbued with sufficient indicia of reliability to warrant a denial of the defendant's limited right to cross-examination.

The first police report read by the probation officer in this case involved the defendant's arrest on April 8, 1988. The officer related that he observed a vehicle driving slowly in the middle of the road. He saw the vehicle make a right turn and cross into the opposite lane of travel. After pulling the vehicle over, the officer observed a bottle of beer on the floor of the vehicle and "beer all over the floor." The officer detected a strong odor of alcohol on the operator's breath. The opera-

tor slurred his speech and dropped many papers while looking through his wallet. The officer's report explains in detail three field sobriety tests, all of which the operator failed. The operator was Ralph Durling, the defendant.

The second police report is equally as detailed as the first. The officer stated that, after receiving a complaint, he and his partner approached the defendant's vehicle. The officer observed the defendant sitting in the driver's seat, "holding the steering wheel of the vehicle." The keys were in the ignition. The officers asked the defendant for his license and registration. The defendant did not reply.[7] At that point the officer noted a strong odor of alcohol coming from the defendant. The officer asked the defendant if he had been drinking and the defendant replied with an obscenity. The officer then conducted three field sobriety tests, each of which he describes in his report, and each of which the defendant failed.

Both of the police reports relate facts observed by the police officers personally. Both reports are factually detailed rather than general statements or conclusions. We think the factual detail is indicative of reliability. See *Egerstaffer* v. *Israel*, 726 F.2d 1231, 1235 (7th Cir. 1984) (relying on detail of a report as an indication of its reliability). Moreover, the fact that two different police officers from different police departments each reported finding the defendant in similar circumstances indicates that neither report is without a basis in fact. The similarity of the reports is indicative of their reliability. It should also be noted that it is a crime for police officers to file false reports. G. L. c. 268, § 6A. In our view, this significantly bolsters the reliability of the reports.[8] We note that both of the police reports relate primary facts, not mere conclusions or opinions. We need not reach the Commonwealth's claim that the reports may fall within the public

---

[7]It should be noted that both police reports indicate that upon further investigation by the officers it was determined that Durling's license to operate a motor vehicle had been revoked.

[8]We do not consider it significant that the police reports were read to the judge rather than presented to him. The probation officer was under oath when she read the reports.

records exception to the hearsay rule. See *Commonwealth* v. *Slavski*, 245 Mass. 405, 415-417 (1923). In the absence of findings and rulings on this issue by the trial judge, we prefer to rely solely upon the inherent reliability of the reports.

The substantial reliability of the police reports in this case, coupled with the practical difficulty of presenting live testimony, discussed earlier, convinces us that the District Court judge could properly base his order of revocation on the evidence presented. Since the judge determined that the evidence carried sufficient weight to justify revocation, we need not remand the case despite the judge's failure to identify "good cause" for denying confrontation.

*Judgment affirmed.*