COMMONWEALTH *vs.* MICHAEL L. CATES.

No. 00-P-1499.

Plymouth. April 12, 2002. - April 10, 2003.

Present: BECK, BERRY, & McHUGH, JJ.

*Practice, Criminal,* Revocation of probation, Confrontation of witnesses, Hearsay. *Evidence,* Videotape, Hearsay.

Statement on the use of hearsay in a probation revocation proceeding. [761-762]

At a probation revocation proceeding, support existed for the judge's conclusion that the complainant's statements, made during a videotaped sexual assault intervention network interview, had sufficient indicia of reliability to justify admission of the videotape in evidence despite its being hearsay, where, given the complainant's age and the circumstances surrounding the allegation, her statement was adequately detailed; based on personal knowledge and direct observation; corroborated, at least to some extent, by the probationer; and provided under circumstances that supported the veracity of the source. [762-763]

At a probation revocation proceeding, sufficient facts existed to support the judge's conclusion that the Commonwealth had good cause for not using the alleged victim's live testimony at the hearing. [763-765]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on October 26, 1998.

A proceeding for revocation of probation was heard by *Robert E. Baylor,* J.

*Norma J. Scott,* Committee for Public Counsel Services, for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

BECK, J. In the spring of 2000, while on probation for driving with a revoked license and other motor vehicle offenses, the defendant was charged with statutory rape and indecent assault and battery of a child over fourteen. After a hearing, a District Court judge found the defendant in violation of probation on

the basis of the new charges. The judge revoked the defendant's probation and imposed the underlying sentence. On appeal from the District Court order, the defendant claims there was no showing of good cause for not calling the alleged victim to testify at the hearing; that even if there was good cause, the hearsay on which the finding of a violation was based "lacked substantial indicia of reliability"; and that neither the proceedings nor the judge's findings met the standards set out in rule 6(b) of the District Court Rules for Probation Violation Proceedings (West 2000) (Rules).

*The evidence.* The Commonwealth's primary witness at the probation revocation hearing was Michelle Hughes, a Hanson police officer (officer) who interviewed the alleged victim on May 17, 2000, a month after the alleged assault, and again six weeks later. In addition, the prosecutor introduced in evidence and played a fourteen-minute videotape of a SAIN (sexual assault intervention network) interview of the alleged victim conducted by a member of the district attorney's staff on May 22. (The SAIN interview was not under oath.) In the videotaped interview the alleged victim, Jane (a pseudonym), gave the following account.

On April 18, 2000, Jane went to visit the defendant's daughter at the trailer the daughter shared with her father. When Jane arrived, the daughter was at work, but the defendant was home. After watching television for an hour or so, Jane went to sleep in her clothes on her friend's bed at 8:00 or 8:30 P.M. After a while, perhaps forty-five minutes or an hour, the defendant entered the room wearing a red bathrobe. He knelt on the bed and pulled down Jane's jeans and underwear. Jane was lying on her side facing toward the wall and away from the defendant. The defendant put his penis into her vagina and moved his body "back and forth." "He like — He just came from the back." "He was breathing heavy." Jane pretended that she was asleep.

The defendant was arrested the day after the SAIN interview. He acknowledged that Jane had been at his home on the evening in question. He said that she received a telephone call and that he had gone into the room where she was sleeping and had shaken her but was unable to wake her up. He also admitted that in the past he had often kissed Jane on the cheek and had played "grab ass" with Jane and his daughter.

*The judge's findings.* At the conclusion of the hearing, the judge summarily revoked the defendant's probation from the bench. A year later, on order of this court pursuant to this appeal, the judge issued the "Court[']s Reasons for Revoking Defendant's Probation." See rules 6(b), 7(c). See also *Commonwealth* v. *Ivers*, 56 Mass. App. Ct. 444, 444-445 (2002). In his decision, the judge determined that "[b]ased on the credible evidence presented during the course of the hearing [and] . . . on a preponderance of the evidence [I find] that the defendant has violated the terms and conditions of his probation." In particular, he found the SAIN videotape to be "demonstrably reliable evidence . . . that . . . is substantially trustworthy . . . [because Jane] understood that she had to be truthful and to indicate to the interviewer if something was not accurate and she said yes which indicates to this Court her acknowledgment of her obligation to be truthful." His other reasons for crediting the video tape essentially tracked Jane's out of court statements.

The judge also found that "the Commonwealth had good cause for not using the alleged victim[']s live testimony at the hearing." He concluded that "[i]n this circumstance where the alleged victim is the only witness with personal knowledge of the crime . . . the trauma of testifying at a probable cause hearing, before the Grand Jury and at trial is onerous enough for [Jane]. The Court has said society has no interest [in] add[ing a] probation revocation hearing to the list" of proceedings Jane must endure, paraphrasing a footnote in *Commonwealth* v. *Durling*, 407 Mass. 108, 117 n.4 (1990), and also citing *Commonwealth* v. *Lavalley*, 410 Mass. 641 (1991), and *Commonwealth* v. *Hill*, 52 Mass. App. Ct. 147 (2001).

*Legal background.* The leading case on the use of hearsay evidence in probation violation proceedings is *Commonwealth* v. *Durling, supra.* That case, however, "[did] not establish clearly whether a demonstration of the reliability and trustworthiness of hearsay evidence constitutes a showing of good cause obviating the need to permit the defendant to confront persons who allegedly witnessed his criminal conduct, [*Commonwealth* v. *Durling*, 407 Mass.] at 118, or whether both the reliability of the hearsay *and* good cause for not producing the witness must be established, *id.* at 118-119, 122" (emphasis original). *Com-*

monwealth v. *Emmanuel E.*, 52 Mass. App. Ct. 451, 455 n.5 (2001).

In order "to codify the provisions of applicable case law and to provide clarity in areas of long-standing ambiguity," the District Court promulgated the Rules, which were adopted on December 2, 1999, and became effective January 3, 2000. Commentary to rule 1, at 590. Rule 6(a) clearly establishes that hearsay evidence is admissible at probation violation hearings. Rule 6(b) "addresses those cases where 'the probationer has no opportunity to confront a witness with personal knowledge and test the reliability of that evidence by cross-examination.' " *Commonwealth* v. *Harrigan*, 53 Mass. App. Ct. 147, 150 (2001), quoting from the commentary to rule 6(b). Rule 6(b) provides that

> "[w]here the sole evidence submitted to prove a violation of probation is hearsay, that evidence shall be sufficient only if the court finds in writing (1) that such evidence is substantially trustworthy and demonstrably reliable and (2), if the alleged violation is charged or uncharged criminal behavior, that the probation officer has good cause for proceeding without a witness with personal knowledge of the evidence presented."

"This rule takes a middle ground, requiring that in *all* cases where the only evidence of an alleged probation violation is hearsay there must be a finding that the hearsay is substantially trustworthy and demonstrably reliable, and requiring a showing of why a live witness is unavailable when the alleged probation violation is based on charged or uncharged criminal behavior" (emphasis original). Commentary to rule 6, at 599.

*Discussion.* Following the Rules, we consider first whether the hearsay was "substantially trustworthy and demonstrably reliable," rule 6(b), so as to meet due process standards. See *Commonwealth* v. *Hill*, 52 Mass. App. Ct. at 154. A videotape, in this case consisting of Jane's out-of-court statements in response to questions, introduced for the truth of the matter asserted, see *Commonwealth* v. *Keizer*, 377 Mass. 264, 269 n.4 (1979) (cited in the commentary to rule 6), has certain special characteristics. First, it contains the precise words of the person being interviewed, in this case complete with the context of her

statements. Second, it offers the fact finder the opportunity to assess the interviewee's demeanor. See *Commonwealth* v. *Lavalley*, 410 Mass. at 645 ("videotapes are 'on balance, a reliable evidentiary resource,' [and] [c]onsequently . . . should be admissible as evidence if they are relevant . . . [and] provide a fair representation of that which they purport to depict"); *Commonwealth* v. *Diaz*, 422 Mass. 269, 272 (1996) ("A recording speaks for itself literally on questions concerning what was said and in what manner").

"[The] five criteria for the court's determination of whether a given piece of hearsay evidence is 'substantially trustworthy' and 'demonstrably reliable,' " commentary to rule 6, at 599-600, also support the judge's findings. Given Jane's age and the circumstances, her statement was adequately detailed; based on personal knowledge and direct observation; corroborated, at least to some extent, by the probationer, compare *Commonwealth* v. *Joubert*, 38 Mass. App. Ct. 943, 945-946 (1995) (medical report showing small bruise in "perineal area lateral to [the child's] vulva" did not render the child's statement that "Daddy touched my peepee" substantially reliable); and, according to the judge, provided under circumstances that support the veracity of the source.

We are mindful of certain limitations in the evidence here. First, Jane was not a disinterested witness. Second, although the judge said that he based his finding of the violation "on the credible evidence," suggesting that he believed Jane's account, he made no explicit findings on her demeanor. Cf. *Brown, petitioner*, 395 Mass. 1006, 1007 (1985) (judge responsible for determining the weight and credibility of evidence at revocation hearing). Nor did he make any attempt to reconcile the discrepancies between Jane's SAIN interview and her later statements in which, upon interrogation, she described other aspects of the sexual assault, including oral sex and her use of marijuana with the defendant. Nevertheless, there was support for the judge's conclusion that Jane's statements had sufficient indicia of reliability.

*Good cause.* In closing argument, the prosecutor argued that the Commonwealth "made a personal judgment call in not calling [Jane] to testify, because ultimately this is a revictim-

ization of [her]." The prosecutor emphasized the SAIN interview and the two other interviews of Jane, and argued that Jane had told three friends and the mother of one of these friends about the alleged rape. However, there is nothing in the record to support the existence of these other disclosures, other than the one friend the officer interviewed. Perhaps these other potential witnesses were mentioned in the police reports, but those reports are not included in the record either.

In finding that the Commonwealth had "good cause for not using the alleged victim['s] live testimony at the hearing," the judge paraphrased an oft cited footnote in *Commonwealth* v. *Durling, supra,* to the effect that rape victims constitute a compelling example of persons who should not be required to appear at probation violation hearings some distance from their homes. 407 Mass. at 117 n.4 ("The trauma of testifying at probable cause hearings, before the grand jury, and at trial is onerous enough for such a victim. Society has an interest in not adding probation revocation hearings to that list").

*Durling,* however, did not involve a rape or even a related offense. It was a drunk driving case. The footnote was dictum. The defendant argues that an allegation of sexual assault does not, "ipso facto, [constitute] 'good cause' to dispense with the defendant's right to cross-examine the witness." We agree. Mere reference to the *Durling* footnote does not establish good cause. In this case, for example, there is no evidence that Jane ever appeared at a probable cause hearing or before a grand jury. Compare *Commonwealth* v. *Hill,* 52 Mass. App. Ct. at 153 (victim had given factually detailed sworn testimony before the grand jury).

Nevertheless, the facts of this case are sufficient to support the judge's conclusion that testifying would have been unduly stressful for the alleged victim, even if not for the reasons given. The police officer testified that Jane, who was fourteen years old, was upset and crying during her interview. The judge was able to observe Jane's demeanor during the tape-recorded SAIN interview. She had only recently moved away from the town where the alleged rape took place so that she was isolated from her friends there. Moreover, the defendant, in whose house

she had stayed before, was the father of Jane's good friend, who was two years older than Jane and who attended the revocation hearing and testified for her father.

In sum, while more specific findings from the judge would have been preferable, there was sufficient evidence before him to support findings of good cause and substantial trustworthiness. The order revoking the defendant's probation is therefore affirmed.

*So ordered.*