NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-168

COMMONWEALTH

vs.

BREON L. STROUP.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Breon L. Stroup, appeals from a District Court order revoking his probation based in part on evidence that he committed five new offenses, including unarmed burglary and possession of cocaine with intent to distribute. His principal claim is that the hearing judge erred by considering unreliable hearsay evidence during the revocation hearing, including statements from the burglary victim and the State trooper who arrested Stroup for possessing cocaine. Because Stroup later pleaded guilty to the possession charge, see Fall River Dist. Ct. Dock. # 1932CR001561 (MassCourts), we need not address his claim that the judge erred in considering the State trooper's arrest report. See Commonwealth v. Milot, 462 Mass. 197, 201-202 (2012) ("subsequent pleas of guilty to the offenses that formed the basis of the judge's factual finding of a

violation of probation render[] moot the claim that the hearsay was unreliable").  Accordingly, we examine only whether the consideration of the burglary victim's hearsay statements and other evidence related to the burglary violated Stroup's due process rights.  Seeing no violation, we affirm the order revoking probation.

Background.  In April 2019, while Stroup was on probation based on previous drug and assault charges, Dartmouth police obtained a warrant for his arrest in connection with a break-in at a local motel.  Separately, the following week, State police arrested Stroup on drug charges.  Two complaints issued -- one for burglary and other charges stemming from the break-in,[1] and another for possession of a class B substance with intent to distribute and a related conspiracy charge.  Based on these new charges, Stroup was issued a notice of probation violation and of a hearing.  The notice also alleged two technical violations: failure to pay probation supervision fees and failure to attend a visit with his probation officer.

During the hearing, the probation department called Dartmouth police Officer Mark Vachon to testify about the motel

---

[1] The charges arising from the burglary were later dismissed for lack of prosecution.  See New Bedford Dist. Ct. # 1933CR001722 (MassCourts).  Nevertheless, "the fact that the charges against the defendant . . . were later dismissed for failure to prosecute is immaterial to the validity of the revocation." Commonwealth v. Mejias, 44 Mass. App. Ct. 948, 949 (1998).

break-in.  We summarize that testimony.  Vachon and a colleague were dispatched to the motel early in the morning of April 3, 2019, and learned from the motel owner of a reported break-in in room 145.  The room was rented to one Angelica Estrela, who was not present when the officers arrived.  Vachon inspected the room and found the front window broken and the door ajar.  The officers recovered a cellphone from the ground in front of the broken window.

Vachon watched a surveillance video recording of that night, provided to him by the motel owner but no longer available by the time of the hearing.  The video showed three men in a dark sedan enter the motel parking lot at approximately 3:30 A.M. and approach the door to Estrela's room three times over the course of about an hour.  On the third occasion, the men ran from the room carrying several objects, including what appeared to be some clothing and a box, and then drove away.  Though Vachon could not identify the men, he could discern from the black-and-white video that one of them was wearing light-colored clothing.

Vachon further testified that, when Estrela arrived back at the motel, she reported to the officers that her belongings, including her clothes and $10,000 in cash, were missing from her room.  The officers showed her the video, and she positively identified two of the men as Stroup and his friend, Isaiah

3

Toure. She told the officers that she had met Stroup that day and had allowed him into her room earlier that night while she was packing her belongings. She recognized Stroup's and Toure's clothing in the video as matching what they had worn earlier that day. In the video, she could see Stroup carrying her clothes away from her room. She also showed Vachon a recent video from Stroup's Snapchat social media account in which Stroup wore clothing that, in Vachon's opinion, appeared similar to the light-colored clothes worn by one of the men in the surveillance video. Estrela confirmed the identities of the two men based on registry of motor vehicles (RMV) photos the officers showed her, and she identified the cellphone as Stroup's, based on a picture of his child appearing on the phone's lock screen.

In addition to Vachon's live testimony, the probation department introduced, over Stroup's hearsay objections, Vachon's police report, Estrela's written statement, and the State police arrest report detailing the events that led to Stroup's drug charges. The judge found that Stroup violated the terms of his probation by committing the crimes alleged in the complaints as well as the technical violations. The judge revoked Stroup's probation and sentenced him to serve the balance of his two-and-one-half year house of correction sentence for the assault charge.

4

Discussion. On appeal, Stroup primarily challenges the judge's consideration of Estrela's statements, both to Vachon and in writing, identifying Stroup as the burglary suspect. He argues that the statements were unreliable hearsay and, accordingly, that the judge's consideration of them to find that Stroup committed the burglary violated his due process rights, including his right to confront adverse witnesses. We are not persuaded.

"Even though standard evidentiary rules do not apply to probation revocation hearings," due process still requires that a finding of a probation violation be based on reliable evidence. Commonwealth v. Durling, 407 Mass. 108, 117-118 (1990). To determine whether proffered evidence is sufficiently reliable, a hearing judge may consider:

> "(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity."

Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016). A hearsay statement need not satisfy all of these criteria to be considered "trustworthy and reliable" evidence sufficient to

5

support a finding of a probation violation.  Commonwealth v. Patton, 458 Mass. 119, 133 (2010).

Due process also guarantees a probationer "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" (quotation omitted).  Durling, 407 Mass. at 113. But "a showing that the proffered [hearsay] evidence bears substantial indicia of reliability and is substantially trustworthy is a showing of good cause obviating the need for confrontation."  Id. at 118.

Here, Estrela's statements were based on her personal knowledge and direct observation of Stroup's appearance and the clothes he wore that day.  Her oral and written statements were made close in time to the events in question, were factually detailed, and were consistent with each other.  They were in part corroborated by Vachon's testimony that a burglary had occurred in Estrela's room and that he witnessed Estrela identifying Stroup and Toure in the surveillance video and the RMV photos.[2]  Although Stroup complains that he had no

---

[2] The statements were also confirmed in Vachon's police report. Because that report stated essentially the same facts as Vachon's testimony, the judge had no need to rely on the report for any of his findings.  Nevertheless, the report bore many indicia of reliability:  it was based on Vachon's direct observations, was written on the same day as the events it reported, was factually detailed and consistent with his live testimony, and was submitted to support an application for an

opportunity to see the surveillance video, he cites no authority suggesting that the video itself had to be offered in evidence in order to corroborate Estrela's statements.  Nor does Stroup challenge either the authenticity of the video or the reliability of Vachon's testimony about his direct observation of its contents.[3]

Finally, Estrela made her statements under circumstances indicating their veracity, in that it is a crime to make a false report of a crime to a police officer.  See Commonwealth v. Nunez, 446 Mass. 54, 59 (2006); Commonwealth v. Negron, 441 Mass. 685, 691 (2004).  In addition, Estrela sought to corroborate her identification of Stroup by showing Vachon the Snapchat video of the man she said was Stroup.  Vachon then confirmed that the man in that video wore light-colored clothing similar to that worn by the suspect in the surveillance video.

Based upon the foregoing, the judge did not err in determining that Estrela's statements as a whole were

_____

arrest warrant.  The report was thus substantially reliable. See Hartfield, 474 Mass. at 484.  Moreover, Vachon was available to be cross-examined about it.

[3] We do not understand Stroup to be arguing that anything depicted in that video was itself hearsay, so as to require that it be evaluated for reliability.  Nothing in the video, at least as Vachon described its contents, made any "statement," as that word is defined for hearsay purposes.  See Mass. G. Evid. § 801 (a) (2022) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion").

substantially reliable.  Her ability to accurately perceive and truthfully report what she perceived was sufficiently established.  The judge could thus treat her identification of Stroup in the surveillance video, and of Stroup's phone,[4] as substantially reliable.  As numerous cases demonstrate, there is no requirement that each one of a declarant's statements be individually corroborated before it may be treated as reliable.  See, e.g., Patton, 458 Mass. at 133; Nunez, 446 Mass. at 59; Commonwealth v. Henderson, 82 Mass. App. Ct. 674, 679 (2012); Commonwealth v. Cates, 57 Mass. App. Ct. 759, 763 (2003).  Corroboration is merely one of the criteria for reliability, and not all of those criteria need be satisfied.  See Patton, 458 Mass. at 133.

In sum, the judge's finding of a probation violation based largely on Estrela's statements did not violate Stroup's due process rights.  Also, as noted at the outset, whether the hearsay report of the drug offenses was substantially reliable is moot, under Milot, 462 Mass. at 201-202; the finding of a probation violation based on the possession charge was proper.  We therefore need not consider Stroup's claim that the judge

---

[4] Although the record included no affirmative explanation of how Estrela, having met Stroup for the first time that day, was able to identify Stroup's child from the phone's lock screen, we do not view this gap as fatal, given the other circumstances showing the reliability of her statements.

8

would not have been warranted in revoking probation based only on Stroup's technical violations.

Order revoking probation and
  imposing sentence affirmed.

By the Court (Massing,
  Sacks & Walsh, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  February 21, 2023.

---

[5] The panelists are listed in order of seniority.