NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-844                                        Appeals Court

COMMONWEALTH  vs.  KYRONNE D. WILLIAMS.

No. 21-P-844.

Bristol.     January 5, 2023. - May 23, 2023.

Present:  Meade, Rubin, & Blake, JJ.


Practice, Criminal, Revocation of probation, Nolle prosequi,
    Assistance of counsel. Motor Vehicle, License to operate.
    Registrar of Motor Vehicles, Revocation of license to
    operate. License. Forgery.



Complaint received and sworn to in the Taunton Division of
the District Court Department on August 21, 2020.

A proceeding for revocation of probation was heard by
Maureen H. McManus, J.


Jenny L. Margeson for the defendant.
Stacey L. Gauthier, Assistant District Attorney, for the
Commonwealth.


RUBIN, J.  The defendant appeals from an order of a judge

of the District Court (1) finding that he violated his probation

by committing new offenses and (2) revoking his probation.  The

defendant argues primarily that this was improper because

criminal complaints charging him with these new offenses were disposed of by nolle prosequi prior to his final probation violation hearing.  We disagree, and affirm.

Background.  On October 14, 2020, the defendant pleaded guilty to larceny over $1,200.  See G. L. c. 266, § 30 (1).  The defendant was sentenced to one year in the house of correction with fifty-six days to be served and the balance suspended for one year, until October 13, 2021.  As a general condition of his probation, the defendant was required to obey all local, State, and Federal laws.

On December 3, 2020, the defendant was driving a rental car on Route 91 south when he was stopped by Trooper Robert Bardier. The trooper had noticed that one of the defendant's front headlights was out.  The trooper approached and asked for the defendant's identification.  The defendant provided the trooper with a North Carolina driver's license.

The trooper entered the information from the license into the Criminal Justice Information Services (CJIS) database, which showed that the license was suspended.  After further investigation, the trooper discovered that the defendant "had active warrants out of Rhode Island, . . . as well as a[n] active warrant out of New Bedford court."

The trooper arrested the defendant.  He arranged for the vehicle to be towed, and conducted a motor vehicle inventory

search in anticipation of its towing.  During this search, the trooper found a New Jersey driver's license that, he testified, had what he believed to be the defendant's picture on it, but with a different name.

The trooper entered the information from the New Jersey driver's license into the CJIS database, and the query returned no results.  The trooper asked the defendant about the New Jersey driver's license, and the defendant stated that he did not know whose picture was on the license but that he would never provide a "fake ID" to an officer.

The following day, a criminal complaint issued from the District Court, charging the defendant with unlicensed operation of a motor vehicle, see G. L. c. 90, § 10, and "falsely mak[ing], steal[ing], alter[ing], forg[ing], or counterfeit[ing], or procur[ing] or assist[ing] another to falsely make, steal, alter, forge or counterfeit . . . a license to operate motor vehicles," see G. L. c. 90, § 24B.[1]

The probation department subsequently issued a notice of violation.[2]  On December 21, 2020, a judge found, after a

---

[1] The latter charge was based on his possession of the New Jersey driver's license.  Neither party suggests that the statute does not reach licenses to operate motor vehicles issued by other States.

[2] Although the notice of violation was not included in the record appendix, the probation violation finding and disposition

nonevidentiary hearing, probable cause that the defendant had violated his probation and ordered that the defendant be held in custody pending a final violation hearing.  Three days later, on December 24, 2020, all the charges stemming from the defendant's traffic stop were nol prossed by the Commonwealth.

The final probation violation hearing took place a little over a month later.  The probation officer called Trooper Bardier, who testified regarding the traffic stop.  The Commonwealth assisted the probation officer with the questioning of the trooper.  In response to a question from the Commonwealth about whether he concluded that it was the defendant in the photograph on the New Jersey driver's license, the trooper testified, "I believe that it was [the defendant], yes."  The trooper was questioned about the New Jersey driver's license on cross-examination and asked by defense counsel whether he had found any evidence that the defendant had relied on the alias found on the New Jersey driver's license, "Elliott Itol," in the past.  The trooper responded that he had not.  After this testimony, the probation officer rested.

The defendant called Joshua Borden, who owned the defendant's rental car.  Borden testified that he was in the business of renting cars, and that his cars were predominantly

---

form indicates that the term of probation that the defendant violated was a prohibition on "Violat[ing] CRIMINAL LAW(s)."

rented by young Black men, of whom, we infer based on the transcript, the defendant is one. On cross-examination, Borden testified that the cars were regularly cleaned between renters and that the person who had rented the car prior to the defendant was a man named Tray Green.

Following Borden's testimony, the judge noted that the "defendant at this point is resting with regard to the evidence." The judge then asked to "hear from either the Commonwealth or Probation as to what Probation believes they have established . . . and what they believe they've proven."

The probation officer proceeded to argue his case. During this argument, the probation officer proffered to the judge that he had looked "up Mr. Itol in New Jersey RMV. There was only one Elliot Itol in New Jersey." The probation officer, despite having rested, proceeded to enter the picture he had found of Elliot Itol into the record, arguing that "the person in that image could not be further from what the trooper identified as the picture in the ID that was found in [the defendant's] car, Your Honor. The trooper identified an African-American in the picture, so much looking like [the defendant]. As you can see, Judge, that is not what the picture looks like." Defense counsel did not object to the motion to enter the picture in evidence. The picture shows a white man.

Defense counsel made his closing argument.  The judge then concluded that "having had the opportunity to hear the testimony of the trooper who testified in this case, as well as the witness produced by the defendant, Mr. Borden, I credit the testimony of the trooper.  I find his testimony was convincing and as a result I do find by a preponderance of the evidence that [the defendant] did, in fact, violate the terms and conditions of his probation with regard to the charges of having committed new offenses or having been charged with new offenses of unlicensed operation and forgery or misuse of" a license to operate motor vehicles.

Discussion.  1.  The effect of the nolle prosequi.  The defendant's first argument on appeal is that the nolle prosequi of his underlying criminal charges should have terminated the probation violation proceedings.  Although neither the dismissal of an underlying complaint due to a failure to prosecute, see Commonwealth v. Mejias, 44 Mass. App. Ct. 948, 949 (1998), nor even a defendant's acquittal prior to probation violation proceedings, see Commonwealth v. Holmgren, 421 Mass. 224, 225 (1995), require the termination of violation proceedings, the defendant argues that a nolle prosequi of the underlying complaint should.  We disagree.

The focus of a probation violation hearing where the violation alleged is the commission of a new offense is the

defendant's conduct, not a criminal complaint based on that conduct.  As the Supreme Judicial Court has reiterated, revocation after a probation violation hearing may be based on "[a]ny conduct by a person on probation which constitutes a violation of any of the conditions of his probation." Commonwealth v. Durling, 407 Mass. 108, 112 (1990), quoting Rubera v. Commonwealth, 371 Mass. 177, 180-181 (1976).  A criminal charge is irrelevant to the validity of the proceedings.  Where a complaint criminally charging a defendant for conduct that also underlies his or her notice of a probation violation is nol prossed, the conduct remains a valid basis for a probation violation proceeding.

The defendant relies on Commonwealth v. Miranda, 415 Mass. 1, 5 (1993), to argue that a nolle prosequi terminates probation violation proceedings.  But Miranda did not involve probation violation proceedings.  In Miranda, the Supreme Judicial Court held that the Commonwealth could not on the day of trial reinstate a portion of an indictment it had nol prossed three months before.  See id. at 5-6.  Miranda has nothing to do with the relationship between a nol prossed criminal complaint and an

ongoing parallel probation violation proceeding based on the same underlying conduct.[3]

2. Late introduction of evidence. The defendant's second argument on appeal is that the probation officer's introduction of evidence during his closing argument was error. Recognizing that there was no objection by counsel below, he argues that it was error that created a substantial risk of a miscarriage of justice.

The defendant relies on several cases, including Commonwealth v. Beaudry, to argue that "[a] prosecutor may not use 'closing argument to argue or suggest facts not previously introduced in evidence.'" Beaudry, 445 Mass. 577, 580 (2005), quoting Commonwealth v. Storey, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). But Beaudry, supra, and the other cases cited by the defendant, take place in the context of criminal trials. Probation revocation hearings are different, and "[d]ue process is not so rigid as to" ignore that difference. Durling, 407 Mass. at 113, quoting Gagnon v. Scarpelli, 411 U.S. 778, 788 (1973). "[I]nformality,

---

[3] At oral argument, the defendant raised, for the first time, the argument that the notice of probation violation received by the defendant stated that the violation was based on the defendant's charges, rather than his conduct. The notice was not included in the record appendix. Because this argument was not briefed, we consider it waived. See Commonwealth v. Brillante, 399 Mass. 152, 155 n.6 (1987).

flexibility, and economy" need not "always be sacrificed" (citation omitted), and, indeed, the Supreme Judicial Court has identified that the "[t]wo overriding principles" regarding probation violation proceedings are that they "must be flexible in nature . . . and that all reliable evidence should be considered." Durling, supra at 113-114.

Nonetheless, a probation violation proceeding is not a free-for-all. See Rule 6(c) of the District/Municipal Court Rules for Probation Violation Proceedings (2015) ("After the presentation of evidence, both parties or their counsel shall be permitted to make a closing statement"). Even acknowledging the flexible nature of probation violation hearings, it would at the least have been the better practice for the Commonwealth to have entered this evidence prior to the close of the evidentiary portion of the hearing. We will assume without deciding that it was error to allow it in evidence during closing argument. Nonetheless, the defendant does not contest the reliability of the evidence, nor does he explain how he was prejudiced by the late timing of its introduction, arguing only that its very consideration harmed him. On this record, therefore, even assuming that there was an error, we see no substantial risk of a miscarriage of justice from the timing of the late admission of the evidence.

Relatedly, the defendant raises a claim of ineffective assistance of counsel.  Under the well-known Saferian standard, we ask whether there has been "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  As the Supreme Judicial Court has explained, however, where a defendant raises an unpreserved claim of error as well as a claim that the failure to preserve the claim amounted to ineffective assistance of counsel, and the court finds any error did not create a substantial risk of a miscarriage of justice, the two claims are virtually coextensive.  "[W]hen a defendant alleges that his failure to preserve an issue for appeal stems from ineffective assistance of counsel, as this defendant has, we do not evaluate the ineffectiveness claim separately.  If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice -- ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not."  Commonwealth v. Randolph, 438 Mass. 290, 296 (2002).  Consequently, the defendant's ineffective assistance of counsel claim founders on the same

shoals as his unpreserved claim of error.  See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994) (if counsel's omission does not present substantial risk of miscarriage of justice, there is no basis for ineffective assistance of counsel claim).

3.  Sufficiency of the evidence.  The defendant's final argument on appeal is that there was insufficient evidence to find that he had committed the underlying charges.  Where the defendant raises a claim that the evidence was insufficient to prove the defendant's violation of his probation by a preponderance of the evidence, we examine the record to determine whether it "discloses sufficient reliable evidence to warrant the findings by the judge."  Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000).

The Commonwealth has conceded insufficiency as to unlicensed operation, on the basis that there was insufficient evidence to prove that the defendant had notice that his license had been suspended.  See Commonwealth v. Parenteau, 460 Mass. 1, 5 (2011) ("A charge of operation of a motor vehicle with a suspended or revoked license requires the Commonwealth to prove, among other things, that the defendant was notified that his license had been suspended or revoked").  We agree, and consequently the finding of a violation for committing the new

offense of unlicensed operation of a motor vehicle must be reversed.[4]

Turning to the forgery or misuse of the New Jersey driver's license, see G. L. c. 90, § 24B, we conclude that, despite the Commonwealth's unfortunate failure to introduce the New Jersey driver's license, there was sufficient evidence to support the judge's findings.

Trooper Bardier testified that, during his search of the defendant's rental car, he found a New Jersey driver's license on the passenger's seat. The trooper further testified that he was able to get a good look at the defendant during the traffic stop, that he believed the photograph on the New Jersey driver's license was a photograph of the defendant, and that the New Jersey driver's license listed a different name. The owner of the rental car testified that he cleaned the car between renters, and that he certainly would have cleaned the passenger's seat on which the license was found before renting the car to the defendant. The judge credited the trooper's testimony, finding it "convincing." This evidence is sufficient to support the judge's finding by a preponderance of the

_____

[4] In light of this, we need not reach the defendant's alternative argument that the CJIS system is insufficiently reliable, without more, to support a finding that one's license is suspended.

evidence that the defendant forged or misused a license to operate motor vehicles in violation of G. L. c. 90, § 24B.

Conclusion.  We affirm the finding that the defendant forged or misused the New Jersey driver's license and reverse the finding related to the unlicensed operation of a motor vehicle.  Because "it is not for us to speculate what action the judge would have taken had [s]he found that the defendant violated probation only by" forging or misusing the driver's license rather than by committing both crimes, Commonwealth v. King, 96 Mass. App. Ct. 703, 712 (2019), we vacate that aspect of the order revoking probation and committing the defendant to serve the balance of his suspended sentence and remand the case to allow the judge to consider the appropriate disposition for the defendant's violation.

So ordered.