COMMONWEALTH *vs.* JOHN A. THISSELL.

No. 08-P-1206.

Essex. March 18, 2009. - August 4, 2009.

Present: GRASSO, SMITH, & TRAINOR, JJ.

Further appellate review granted, 455 Mass. 1101 (2009).

*Practice, Criminal,* Probation, Revocation of probation. *Global Positioning System Device. Evidence,* Hearsay, Business record, Admissions and confessions.

At a probation revocation hearing, the judge did not err in admitting in evidence global positioning system (GPS) logs and maps generated by a GPS device that the defendant was required to wear as a condition of probation, where the logs and maps were not hearsay, in that, although by examining the maps and logs, an observer could readily see the location of the individual wearing the GPS device and the times of any violation, the logs and maps themselves did not make a "statement" [776-777]; moreover, even if such maps and logs were considered hearsay, they would be admissible as business records in the control of the probation department [777-778].

At a probation revocation hearing, the defendant's statements to probation department staff members were admissible as admissions. [778]

COMPLAINT received and sworn to in the Ipswich Division of the District Court Department on May 7, 2004.

A proceeding for revocation of probation was heard by *Allen G. Swan, J.*

*Elena M. Rosnov* for the defendant.

*Ronald DeRosa,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On November 29, 2007, after a probation revocation hearing, a District Court judge revoked the defendant's probation. On appeal, the defendant claims that the judge abused his discretion in revoking probation because the judge allowed in evidence global positioning system (GPS) records obtained using a GPS device that the defendant was required to wear as a

condition of probation.[1] The defendant argues that such evidence is not reliable hearsay and should not have been admitted at the probation revocation hearing.

*Background.* On July 22, 2004, the defendant pleaded guilty to a number of offenses, including assaults on his wife. On a charge of assault and battery by means of a dangerous weapon, the defendant received a direct sentence of two and one-half years in the house of correction; eighteen months to be served with the balance of the sentence suspended until January 23, 2008, and the defendant was placed on probation with various conditions, including a "no contact" order that the defendant stay away from his wife. On an assault and battery charge, the defendant received a sentence of two and one-half years in the house of correction, suspended until January 23, 2010.

On October 21, 2005, the defendant was served with a notice that he had violated his probation because he failed to abide by the "no contact" order contained in his conditions of probation. The judge subsequently found the defendant to have violated his probation and imposed the balance of the sentence on the assault and battery by means of a dangerous weapon conviction. The judge also added a level four community correction program with "GPS if and when available" as a condition of probation.[2]

On February 8, 2007, after a hearing on the defendant's request to modify his terms of probation, the judge modified those terms so as to continue the defendant on GPS monitoring for twenty-four hours each day without a curfew, but with the exclusion zones. In addition, the defendant was to remain 2,000 feet from the marital home, with two specific exceptions.

On September 10, 2007, a notice of a probation violation was served on the defendant, stating that the defendant failed to

---

[1]"A [GPS] device is an electronic monitor designed to report continuously the probationer's current location. . . . A GPS device, as implemented by the Commissioner of Probation . . . consists of two pieces of electronic equipment: an ankle bracelet, which is permanently attached to the probationer, and a GPS-enabled cellular telephone, which communicates with the ankle bracelet and transmits the probationer's current location to the probation department." *Commonwealth* v. *Raposo*, 453 Mass. 739, 740 (2009). In this matter, the communication was sent to the State probation control center (center) in Boston.

[2]The record is not clear as to when the GPS device was attached to the defendant.

comply with a request by the GPS monitoring staff not to submerge his bracelet-transmitter device under water and was disrespectful to the GPS monitoring staff by yelling and swearing at them. On September 14, 2007, another violation notice issued charging the defendant with failing to "comply with GPS electronic monitoring court order by entering [certain exclusion zones]" and violating the no-contact order on September 14 and other dates.

Chief probation Officer Bulgaris was the only witness to testify at the subsequent probation revocation hearing. He explained the manner in which the GPS device worked, including information that once the bracelet-transmitter device was attached to the defendant, his location could be transmitted by a signal to the State probation control center (center). Bulgaris testified that problems with the signal would occur if, among other things, the bracelet-transmitter device was submerged "under so many inches of water." If that occurred, the signal would be lost. Bulgaris also testified, without objection, that on September 7, 2007, the center notified him that it had lost the defendant's signal and that the center had contacted the defendant when it lost the signal and was told by the defendant that he was at the beach and was "going in and out of the water." When told he could not submerge the bracelet-transmitter device under the water, the defendant yelled and swore at the center's staff and refused to comply with their request.[3] The judge allowed Bulgaris, over objection, to place in evidence GPS documents showing the defendant's location at the time of the defendant's conversations with the center on September 7. The documents consisted of a map and a log of the times the signal was lost.

Bulgaris also testified that exclusion zones were established around the wife's home and workplace in accord with the no-contact order entered by the court. Over the objection of the

[3]It was the second time that the defendant had placed the device under water. On August 3, 2007, the signal from the transmitter was lost. The center asked the defendant about the loss of the signal. The defendant stated that he had gone into the water with the transmitter still attached to his body. The defendant was informed not to submerge the transmitter in water because it could cause the signal to be lost. Bulgaris introduced in evidence, over the objection of the defendant, a GPS document that contained the instructions of the center on August 3 not to submerge the transmitter in water.

defendant, Bulgaris was allowed to introduce in evidence GPS documents, including a map showing the defendant's entrance into the exclusion zones on two occasions on September 14, and a log showing the times of the defendant's entrance into the zones.

After the hearing, the judge found by a fair preponderance of the evidence that the defendant had violated the GPS system requirements on different dates. The violations included submerging the GPS device under water and entering the exclusion zones.[4] The judge specifically stated that the violations were found on the basis of the GPS documents, which the judge found to be "substantially trustworthy and demonstrably reliable."

*Discussion.* The defendant claims that the GPS documents were hearsay and should not have been admitted at the probation revocation hearing because they were not reliable and not substantially trustworthy.

"[E]vidence is admissible at revocation proceedings 'that would not be admissible in an adversary criminal trial.' " *Commonwealth* v. *Wilcox*, 446 Mass. 61, 68 (2006), quoting from *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972). In *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990), the court approved the use of hearsay evidence at a probation revocation hearing, declaring that "a showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy is a showing of good cause obviating the need for confrontation."

"Substantially reliable hearsay generally falls into the category of 'conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.' " *Commonwealth* v. *Podoprigora*, 48 Mass. App. Ct. 136, 138-139 (1999), quoting from *Gagnon* v. *Scarpelli*, 411 U.S. 778, 783 n.5 (1973). See *Commonwealth* v. *Durling, supra* at 118-119; *Commonwealth* v. *Mejias*, 44 Mass. App. Ct. 948, 949 (1998).

It appears to us that the GPS documents consisting of maps and logs are not hearsay. "Hearsay requires a 'statement,' i.e., 'an oral or written assertion or . . . nonverbal conduct of a person, if it is intended by the party as an assertion.' " *Com-*

---

[4]The judge did not find a violation on the charge that the defendant was rude and disrespectful to the staff at the center.

*monwealth* v. *Whitlock*, 74 Mass. App. Ct. 320, 326 (2009), quoting from Mass. G. Evid. § 801(a) & (c) (2008-2009). In *Whitlock*, the defendant was charged with, among other things, distribution of a controlled substance in a school zone. The measurement between the location of the drug sale and the school zone was obtained by the use of ArcView, a computerized map showing the location, ownership, and other information about every parcel of land in the city where the sale occurred. *Id.* at 325-326. The court rejected the defendant's claim that the measurement obtained by the use of ArcView was hearsay, stating that "[b]y its very nature, calculation of distance, or of weight, volume, speed, and the like, is impossible without use of a tool that had been calibrated to show a relevant unit of measure, e.g., a ruler, a tape measure, a wheel, a scale, or, at a more sophisticated level, a radar gun, a breathalyzer, or a blood test. When employed to measure something, none of those tools make a 'statement.' " *Id.* at 326-327.

We adopt the court's analysis employed in *Whitlock*. Here, the GPS maps and logs were generated by a GPS device. By examining the maps and logs, an observer can readily see the location of the individual wearing the GPS device and the times of any violation. Therefore, the maps and logs generated by the GPS are not hearsay and are admissible.

Alternatively, even if considered hearsay, the GPS records were admissible as business records. See G. L. c. 233, § 78; Mass. G. Evid. § 803(6)(A). See also *Furtado* v. *Furtado*, 380 Mass. 137, 149 (1980) (probation office records admitted under business records exception); *Commonwealth* v. *Savageau*, 42 Mass. App. Ct. 518, 522 (1997) (same). In order to qualify under the business record exception to the hearsay rule, the records must have been "made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and [it must have been] the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." G. L. c. 233, § 78, as amended through St. 1954, c. 442, § 1.

Here, Bulgaris testified that the documents were in the control of the probation department. It can be inferred that the docu-

ments were made in good faith and in the ordinary course of business of the probation department whose duty it was to supervise the defendant's probation, including the monitoring of his location by means of the GPS device. See *A.L.* v. *Commonwealth*, 402 Mass. 234, 246 (1988) (probation officer under duty to supervise probation). The GPS logs showed that all of the defendant's locations were ascertained to be at or close to the same time the monitoring events occurred and before the surrender hearing. The fact that the GPS documents were not signed, certified, or authenticated is not fatal to their admission. See *Commonwealth* v. *Podoprigora*, 48 Mass. App. Ct. at 139.

The defendant further argues that his statements in the GPS documents on August 3 and September 7, about going swimming, were inadmissible because they are hearsay. The statements, however, could be treated as admissions of the defendant and, therefore, were admissible. See Mass. G. Evid. § 801(d)(2)(A).

We have reviewed the entire record and conclude that there was no error in revoking the defendant's probation.

> *Order revoking probation*
> *affirmed.*