COMMONWEALTH vs. JOHN A. THISSELL.

Essex. March 2, 2010. - July 1, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Global Positioning System Device. Practice, Criminal,* Probation, Revocation
   of probation.

At a probation revocation hearing, records garnered from a global positioning
   system device were sufficiently reliable to serve as the basis for a conclusion
   that the defendant had violated the terms of his probation, where the records
   (consisting of computer-generated maps, superimposed with a representation
   of the defendant's location at the times and dates indicated, as well as activ-
   ity reports) were factually detailed and made close in time to the events in
   question by persons reporting to the probation department and responsible
   for monitoring and communicating with the defendant, and relied on a
   technology that is widely used and acknowledged as a reliable relator of
   time and location data; where the chief probation officer, through whom the
   records were admitted, was thoroughly cross-examined with regard to the
   records and their use by the probation department; and where the defendant
   had contemporaneously corroborated the location information that the rec-
   ords generated. [195-199]
Statement concerning the attestation and certification of records garnered from
   global positioning system devices in probation revocation proceedings.
   [199]

COMPLAINT received and sworn to in the Ipswich Division of
the District Court Department on May 7, 2004.

A proceeding for revocation of probation was heard by *Allen
G. Swan,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Ronald DeRosa,* Assistant District Attorney, for the Com-
monwealth.

*Elena M. Rosnov (Nicole Reilly* with her) for the defendant.

CORDY, J. We must determine whether records garnered from
a global positioning system (GPS) device,[1] used to monitor the

---

[1] "A global positioning system (GPS) device is an electronic monitor designed

movements of the defendant, John A. Thissell, were sufficiently reliable in this case to serve as the basis for the revocation of his probation in accordance with our decision in *Commonwealth v. Durling*, 407 Mass. 108 (1990), and its progeny. We conclude that they were and affirm the revocation of probation.

1. *Background.* In July of 2004, Thissell pleaded guilty to several offenses[2] arising out of assaults on his wife, receiving sentences of both incarceration and probation. The sentencing judge also imposed a number of conditions of probation, including a directive that he abide by a restraining order and "stay away" from the victim of the assault.

On October 21, 2005, Thissell was served with notice that he had violated his probation by having contact with his wife while incarcerated. After finding that Thissell had violated the conditions of this initial probation, the judge imposed the balance of a sentence that had been suspended on one of the offenses, and added electronic monitoring, accomplished by GPS, to the terms of his probation on another.

On February 8, 2007, the judge held a hearing on Thissell's request to modify the terms of his probation. At the conclusion of the hearing, the judge ordered that Thissell continue with GPS monitoring for twenty-four hours each day without a curfew, but with "exclusion zones," into which he was not permitted to travel. (The exclusion zones surrounded the marital home and his wife's place of employment.) Thissell was also ordered to stay 2,000 feet away from these locations.

On September 10, 2007, Thissell was served with a notice that he had again violated the terms of his probation, the principal basis of which was his failure to comply with a September 7 directive from the GPS monitoring staff that he refrain from

---

to report continuously the probationer's current location. . . . [The device,] as implemented by the Commissioner of Probation (commissioner), consists of two pieces of electronic equipment: an ankle bracelet, which is permanently attached to the probationer, and a GPS-enabled cellular telephone, which communicates with the ankle bracelet and transmits the probationer's current location to the probation department." *Commonwealth* v. *Raposo*, 453 Mass. 739, 740 (2009). In this case, the accompanying cellular telephone is referred to as a "TrakMate" phone.

[2]Thissell was charged with one count of assault and battery by means of a dangerous weapon; one count of witness intimidation; one count of assault and battery; and one count of resisting arrest.

submerging in water the transmitter component of the GPS monitoring device[3] (September 7 violation). He was subsequently served with a notice of violation on September 14 (September 14 violation), the basis of which was Thissell's entering of the exclusion zones, and his failure to abide by the order to stay 2,000 feet away from them.

The sole witness at the probation revocation hearing that followed (held with regard to both violations) was the chief probation officer. Acknowledging that he was "not an expert," the witness testified about the GPS monitoring system and how it transmits a signal up to a satellite and then down to a monitoring center, pinpointing a probationer's location. He also explained that there is a disruption of the signal if the transmitter that is worn on the probationer's leg is submerged in water.

He further testified that on September 7, a member of the GPS monitoring staff contacted Thissell, using the mobile telephone that accompanies the GPS device, and told him that the monitoring center was losing his signal. Thissell explained that he was at the beach and intended to go swimming. At that point, he was told by the staff member that submerging the equipment would ruin it and that he should not enter the water. Thissell had been warned to refrain from doing so on a prior occasion.[4] Shortly thereafter, the transmitting device stopped functioning and the monitoring center lost contact with him.

During his testimony, the chief probation officer offered in evidence GPS records documenting the submersion of the GPS device on September 7. Those records included a map tracing Thissell's path on a beach to the Atlantic Ocean and an accompanying activity report with time-logged notations. The activity

[3]A second basis for the September 7 violation was Thissell's rudeness to the GPS staff. The judge declined to find a violation of probation based on the defendant's rude behavior.

[4]With respect to this previous warning, the chief probation officer offered in evidence a GPS report of Thissell's activity on August 3, 2007, that included the following entry and accompanying notation: "[Transmitter] out of range . . . . Called client . . . . Client stated that he had 'gone in the water' . . . . Note: Client is not allowed to go swimming with transmitter on his ankle. Information faxed to court [at] Aug. 3, 2007 1:17 P.M." Defense counsel objected to the admission of the August 3 GPS report on the ground that she had not been given access to it before the hearing. The judge overruled her objection. The defendant does not challenge this ruling on appeal.

report contained an entry at 1:59:59 P.M.[5] on September 7 that the transmitter was "out of range." Immediately below this entry there is the following notation: "[S]poke to client . . . , he stated that he was at the beach and keeps going in and out of the water. [C]lient was told that he cannot submerge the brace-l[e]t. [A]t this point the client began swearing and yelling about his conditions of probation." Immediately following that notation is an entry at 3:06:49 P.M. that the transmitter was still out of range, and following that entry, a note entered at 3:43:41 P.M. stating: "It appears that [transmitter] is no longer working properly due to being submerged in salt water." The activity report further notes that a probation officer was notified and a bench warrant for Thissell was issued on the same date.[6]

The witness then testified about the September 14 violation and explained that reports from the GPS monitoring center showed that Thissell had entered the exclusion zones around the marital home and his wife's place of employment, on two occasions on September 14, 2007. When the witness offered the GPS records in evidence, defense counsel objected on hearsay grounds, contending that the records did not qualify for admission under any recognized hearsay exception and were therefore not reliable in the absence of cross-examination.[7] The judge overruled the objection and admitted the GPS records in evidence. Those records included maps of each of the two exclusion zones

---

[5]All the times recorded on the activity report are based on a twenty-four hour clock, i.e., the actual reading for this entry was 13:59:59.

[6]Defense counsel also objected to the admission of this record on the ground that it had not previously been provided to her in discovery. The objection was overruled, and Thissell does not challenge this ruling on appeal.

[7]Defense counsel's objection to the introduction of the records relied on our decision in *Commonwealth* v. *Durling*, 407 Mass. 108 (1990). She argued that in order for hearsay evidence to be considered as the basis for revocation it must be "substantially reliable," and in order to be substantially reliable the evidence must come in as an exception to the rule against the use of hearsay; and, further, if the evidence does not qualify as such an exception, there is no "good cause" to dispense with the right to cross-examine the underlying witnesses. She then argued that the lack of certification of the records made them unreliable and inadmissible as business records and that the chief probation officer's testimony, in which he admitted to a lack of expertise about the process that created the records, was insufficient to authenticate them. She further argued that the records are not admissible as business records because they were not made in the ordinary course, but instead compiled for the purpose of litigation.

and an activity report, noting the times and locations at which Thissell entered and departed from those zones.

Thissell did not testify at the revocation hearing, deferring to his counsel, who conceded that Thissell had entered the exclusion zone around the victim's place of employment when he was driving through a busy intersection on his way to the supermarket.[8]

The judge found "by a fair preponderance of the evidence" that Thissell had violated the "global positioning system requirements" of his probation on "diverse dates" based on "hearsay records [that he found to be] substantially trustworthy and demonstrably reliable." Thissell appealed from the revocation of his probation. The Appeals Court affirmed the judge's decision, holding that the GPS records were not hearsay,[9] *Commonwealth* v. *Thissell*, 74 Mass. App. Ct. 773, 776-777 (2009), and thus admissible, or alternatively, that they were admissible as business records.[10] *Id.* at 777-778. We granted his application for further appellate review.

2. *Discussion.* It is well established that a probation revocation proceeding is not a criminal prosecution, requiring "the full panoply of constitutional protections applicable at a criminal trial." *Commonwealth* v. *Durling*, 407 Mass. 108, 112 (1990). However, because revocation may subject a probationer to the deprivation of his liberty, certain requirements of due process apply to such proceedings.[11] *Id.* at 112-113, citing *Gagnon* v.

---

[8]In his brief filed in this court, Thissell likewise concedes that he entered the exclusion zone around his wife's place of employment on his way to a nearby supermarket.

[9]Relying on its decision in *Commonwealth* v. *Whitlock*, 74 Mass. App. Ct. 320, 326-327 (2009), the Appeals Court reasoned that the GPS documents, which consisted of maps and logs, were not hearsay because they, like the map used to determine the location of a school zone relative to a drug sale, did not make a statement, and thus could not constitute an assertion of the truth of the matter for the purposes of hearsay. *Commonwealth* v. *Thissell*, 74 Mass. App. Ct. 773, 776-777 (2009).

[10]As an alternative basis, the Appeals Court found that the GPS records were admissible under the business records exception to the hearsay rule, reasoning that they were in the control of the probation department and that they were made in good faith in the ordinary course of business for the purpose of supervising the probationer and monitoring his location by GPS monitoring. The court further explained that the lack of certification was not fatal to the admission of the records. *Commonwealth* v. *Thissell*, *supra* at 777-778.

[11]These requirements include "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the

*Scarpelli*, 411 U.S. 778, 782 (1973), and *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972). Once these requirements are satisfied, the procedure employing them is entitled to the benefit of the flexibility allowed by the nature of due process. See *Commonwealth* v. *Durling*, *supra* at 113-114. See also *Morrissey* v. *Brewer*, *supra* at 489 (emphasizing that revocation proceeding entails "narrow inquiry . . . flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial").

Our preeminent concern with respect to the evidence presented and considered at revocation proceedings is its reliability. See *Commonwealth* v. *Durling*, *supra* at 117-118. If the evidence is admissible under standard evidentiary rules, it is presumptively reliable. *Id.* at 118. If it is not admissible under such rules, a judge must "independently" evaluate its reliability. *Id.* While "[u]nsubstantiated and unreliable hearsay cannot . . . be the entire basis of a probation revocation," evidence that bears "substantial indicia of reliability" and is "substantially trustworthy" can be. *Id.* With respect to a defendant's right to cross-examine witnesses whose evidence is admitted through third parties, we have explained that where such evidence is found by the judge to be substantially trustworthy and reliable there is sufficient good cause to dispense with a defendant's opportunity to confront them. See *Commonwealth* v. *Negron*, 441 Mass. 685, 691 (2004), quoting *Commonwealth* v. *Maggio*, 414 Mass. 193, 197 (1993).

In this case, the bases of the revocation were the GPS time and location records, the statements of Thissell and the GPS staff members monitoring his location contained within them, and the testimony of the chief probation officer. The records consisted of three computer-generated maps, superimposed with a representation of Thissell's location at the times and on the dates indicated,[12] and activity reports documenting both Thissell's location at various times and other significant communications between

evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation]." *Commonwealth* v. *Durling*, *supra* at 113, quoting *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973).

[12] The maps include an instruction that reads: "Offender History: Offender

the GPS staff and Thissell or between the GPS staff and proba-
tion officers. We need not determine whether these records are
properly characterized, in whole or in part, as nonhearsay evi-
dence or whether they qualify as a recognized exception to the
rule against hearsay evidence to conclude that they were suf-
ficiently reliable to serve as the basis of the defendant's revoca-
tion consistent with the requirements of due process.[13] They

History allows access to an offender's historical GPS tracking information.
Using the pull down menu, select the desired date and time frame information
and select Submit. The requested GPS tracking information will appear, along
with date and time stamps on the color coded-points representing the move-
ments of the offender."

[13]Computer-generated records create unique problems in the context of the
rule against hearsay. Some courts have distinguished among types of computer
records (similar to the ones at issue here) by classifying them as computer
generated or computer stored — computer-generated records being records
generated solely by the electrical or mechanical operation of a computer, and
computer-stored records being generated by humans and containing statements
implicating the hearsay rule. See, e.g., *State* v. *Armstead,* 432 So. 2d 837, 839-
841 (La. 1983) ("evidence in this case was generated solely by the electrical
and mechanical operations of the computer . . . and was not dependent upon
the observations and reporting of a human declarant"); *Ly* v. *State,* 908 S.W.2d
598, 600 (Tex. Ct. App. 1995) (printout from electronic monitoring program
"does not represent the output of statements placed into the computer by out of
court declarants"). See also Note, Electronic Fingerprints: Doing Away with the
Conception of Computer-Generated Records as Hearsay, 104 Mich. L. Rev. 151
(2006). At least one publication has suggested that some computer or electronic
records might constitute a hybrid, containing both computer-stored records and
"human statements," as well as computer-generated data. See United States
Department of Justice, Computer Records and the Federal Rules of Evidence,
49 United States Attorneys' USA Bull. (Mar. 2001).

The classification of the records as computer-generated or computer-stored
bears directly on the question whether the admission of the records would
violate the rule against hearsay. Because computer-generated records, by defini-
tion, do not contain a statement from a person, they do not necessarily implicate
hearsay concerns. See Mass. G. Evid. § 801 (a) (2010) ("A 'statement' is [1] an
oral or written assertion or [2] nonverbal conduct of a *person,* if it is intended
by the person as an assertion" [emphasis added]); *id.* at § 801 (b) (" 'declarant'
is a person who makes a statement"). Instead, the reliability concern with
respect to computer-generated records stems from authentication of the genera-
tive process that created the records. As for records that constitute a hybrid of
both processes, both hearsay and authentication issues may be present. See
Computer Records and the Federal Rules of Evidence, *supra.* The process by
which the GPS records at issue here were created is not fully apparent from the
record in this case and their creation was not the focus of the revocation hearing.
In any event, because we conclude that the judge did not err in relying on them
in this proceeding, we need not resolve their evidentiary status.

are factually detailed[14] and made close in time to the events in question by persons reporting to the probation department and responsible for monitoring and communicating with the defendant. To the extent they rely on GPS technology, that technology is widely used and acknowledged as a reliable relator of time and location data.[15] Moreover, the chief probation officer, through whom the records were admitted, was extensively cross-examined with regard to the records and their use by the probation department, which allowed the judge to make a principled decision as to their trustworthiness and reliability.

In addition, the reliability of the locator function of the GPS system, as depicted on the maps and logs of September 7 and September 14, was further corroborated by Thissell's contemporaneous admission to the GPS staff that he in fact was at the beach when contacted on September 7, and his admission through counsel at the revocation hearing that he had entered the exclusion zone on September 14 while traveling to the supermarket.

Based on this record, we have little difficulty in concluding that the judge appropriately found the GPS records "substantially

---

[14]The maps provided factual detail as to the probationer's precise location at any given time: they include streets, roads and other landmarks to orient the viewer with respect to the places depicted. In the map showing the exclusion zone, the zone is clearly indicated and an observer can clearly discern the outer boundaries of the exclusion zone by reference to the map.

[15]A review of the origins of GPS technology provides further assurance of its reliability. See National Space-Based Positioning, Navigation, and Timing Coordination Office, The Global Positioning System ("U.S.-owned utility that provides users with positioning, navigation, and timing [PNT] services"). The GPS system consists of three segments operated and maintained by the United States Air Force. *Id.* The space segment is comprised of twenty-four satellites which transmit one-way signals giving the current GPS location and time. The control segment consists of monitor and control stations that command, adjust, track, maintain, and update the satellites. Finally, the user segment includes the GPS receiver equipment that utilizes the transmitted information to calculate a user's position and time. *Id.*

GPS technology has been approved by the Legislature for use in monitoring certain offenders while they are on probation or subject to parole. See, e.g., G. L. c. 127, § 133D ½ (sex offender parolees); G. L. c. 209A, § 7 (enforcement of abuse prevention orders); G. L. c. 265, § 47 (sex offender probationers). See also *Commonwealth* v. *Raposo*, 453 Mass. 739, 741-747 (2009) (detailing legislative history of G. L. c. 265, § 47); *Commonwealth* v. *Donohue*, 452 Mass. 256, 257-259 & n.5 (2008) (discussing GPS as utilized in sheriff's pre-release home confinement program).

trustworthy and demonstrably reliable." Consequently, his reliance on them as the principal basis for his conclusion that Thissell had violated the GPS terms of his probation was proper.[16]

We take this opportunity, however, to recommend strongly that copies of GPS records offered in future revocation proceedings be properly attested and certified by an appropriate custodial officer. See Mass. R. Civ. P. 44 (a), 363 Mass. 807 (1974) ("official record kept within the Commonwealth, or an entry therein, when admissible for any purpose, may be evidenced by . . . a copy attested by the officer having legal custody of the record . . . . [A]ny such copy shall be accompanied by a certificate that such custodial officer has the custody"); Mass. R. Crim. P. 40 (a), 378 Mass. 917 (1979) (same). Such a certification will reduce, if not completely eliminate, some of the legitimate concerns with regard to the authenticity of the GPS records that were well raised during the revocation proceeding in this case.

3. *Conclusion.* For the reasons stated above, the order revoking Thissell's probation is affirmed.

*So ordered.*

---

[16]Thissell also argues for the first time in this court that his confrontation rights under the Sixth Amendment to the United States Constitution were violated by the chief probation officer's testimony. This issue is squarely addressed in *Commonwealth* v. *Wilcox*, 446 Mass. 61, 66-68 (2006). Because a probation revocation proceeding is not a criminal prosecution, a defendant is not entitled to the benefit of the right to confrontation under the Sixth Amendment. Although Thissell does not explicitly argue that we do so, the implication of his argument is that we overrule our decision in *Commonwealth* v. *Wilcox, supra.* We decline to do so. The defendant's reliance on the recent decision of the United States Supreme Court in *Massachusetts* v. *Melendez-Diaz*, 129 S. Ct. 2527 (2009), is inapposite as that case involves a Sixth Amendment right to confrontation in the context of a criminal trial, where a defendant is entitled to the "full panoply of constitutional protections." *Commonwealth* v. *Durling, supra* at 112.