SUPERIOR COURT 
 
 COMMONWEALTH v. MANNIX LEWIS

 
 Docket:
 1483CR00586
 
 
 Dates:
 October 23, 2018
 
 
 Present:
 Robert B. Gordon, Justice of the Superior Court
 
 
 County:
 PLYMOUTH
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION TO EXCLUDE NON-EXPERT TESTIMONY CONCERNING GPS MONITORING AND TRACKING
 
 

 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION TO EXCLUDE NON-EXPERT TESTIMONY CONCERNING GPS MONITORING AND TRACKING* 
            Defendant Mannix Lewis has moved in limine for an order
excluding evidence and testimony pertaining to Mr. Lewis’s GPS device and its
monitoring and tracking of his physical positions on the date and at the time
of the crime.  The gravamen of the
Defendant’s motion is the charge that GPS technology has not achieved a
sufficient level acceptance and reliability to allow for the admission of its
data into evidence.  The Defendant seeks
a Daubert/Lanigan hearing to address this issue.  In the alternative, and wholly apart from the
putative unreliability of the technology, the Defendant submits that there is
no genuine dispute as to his physical position in the area of Main and Shepard
Streets on May 1, 2014.  Thus, it is argued,
GPS evidence is needlessly cumulative, and trial references to Mr. Lewis’s
wearing of the device will unfairly prejudice him by inviting jury speculation
as to the prior bad acts that gave rise to it. [1] --------------------------- [*]
Editor’s Note: A spelling mistake in the original text was corrected in the
heading for convenience purposes. [1]
The Commonwealth has filed its own Motion to Admit GPS Evidence and Request for
Limiting Instruction, which the Court treats as an Opposition to the Defendant’s
motion.                                                             -1-             It is the Court’s conclusion that the reliability of GPS
technology is today so broadly accepted in the scientific and legal community
that no Daubert/Lanigan hearing is necessary to establish the admissibility of
its position data in this case.  In
Commonwealth v. Thissell, 457 Mass. 191 (2010), the Supreme Judicial Court
considered whether GPS-based records of a defendant’s movements were
sufficiently reliable to serve as the basis for a probation revocation.  The records at issue were activity reports
showing the defendant’s time-specified location within particular exclusion
zones, and were introduced at hearing through a probation officer who was not
an “expert” in GPS technology.  Id. at
193-95.  The probation officer simply
testified that the GPS apparatus transmits a signal to a satellite, and that a
central monitoring center is on this basis able to pinpoint a probationer’s
location.  Id. at 193.  Addressing a due process challenge to the
admissibility of the records, the SJC declared: “To the extent they rely on GPS
technology, that technology is widely used and acknowledged as a reliable
indicator of time and location data.” 
Reinforcing this conclusion, the undersigned observes that GPS
technology has been specifically approved by the Legislature for use in
monitoring certain criminal offenders who are sentenced to probation or subject
to parole, see, e.g., Mass. G.L. c. 265, c. 47, a fact the Thissell Court
itself took note of in its ruling.  Id.
at 198 n.15.  See also State v. Brown,
2018 WL 4101065, at *5 (S.C. 2018) (citing Thissell and stating, “we
acknowledge that the reliability or operation of GPS technology in general is
not genuinely disputed,” but noting that GPS records must still be
authenticated for accuracy).             The First Circuit Court of Appeals has similarly held
that expert testimony is not required to validate GPS evidence.  In United States v. Espinal-Almeida, 699 F.3d
588 (1st Cir. 2012), cert. denied, 569 U.S. 936 (2013), GPS data was introduced
at trial and explained through the                                                             -2- testimony of a lay witness
from U.S. Customs (Durand).  Durand
retrieved and analyzed coordinates information in connection with a drug
trafficking case in which a GPS device was aboard a boat that had conducted an
alleged transfer of narcotics.  Id. at 608.  The defendant objected “that the government
did not establish the accuracy or reliability of the processes employed by the
GPS itself or the Garmin and Google Earth software.”  Id. at 608. 
The defendant likewise argued that, due to the specialized and technical
nature of the GPS evidence, an expert witness was needed to authenticate
it.  Id. 
The First Circuit disagreed: “The
issues surrounding the processes employed by the GPS and software, and their
accuracy, were not so scientifically or technologically grounded that expert
testimony was required to authenticate the evidence, and thus the testimony of
Durand, someone knowledgeable, trained, and experienced in analyzing GPS
devices, was sufficient to authenticate the the [sic] GPS data and software
generated evidence.” Id. at 612-613.              Other courts confronting GPS evidence have reached the
same conclusion.  In United States v.
Brooks, 715 F.3d 1069 (8th Cir. 2013), for example, the Eighth Circuit Court of
Appeals held that it was proper for a trial judge to take judicial notice of
the reliability of GPS technology to satisfy the requirements of Fed. R. Evid.
702.  The district court had denied the
defendant’s motion for a Daubert hearing to challenge the “reliability,
accuracy, and underlying soundness of the science” behind GPS evidence, see
United States v. Brooks, 2012 WL 12895351, at *4 (S.D. Iowa) (noting “the
nearly universal acceptance by other courts of the reliability of this
technology”), and the Court of Appeals affirmed.  The Court wrote: “Commercial
GPS units are widely available, and most modern cell phones have GPS tracking
capabilities. Courts routinely rely on GPS technology to supervise individuals
on probation or                                                             -3- supervised
release, and in assessing the Fourth Amendment constraints associated with GPS
tracking, courts generally have assumed the technology’s accuracy.” Id. at 1078.  See also United States v. Matthews, 250 F.
Supp.3d 806, 818-19 (D. Colo. 2017) (denying defense motion for Daubert hearing
on witness’s qualifications to testify concerning GPS data from defendant’s
ankle bracelet, concluding that any challenge to the accuracy of GPS data was a
matter for cross-examination and not an issue of admissibility).              In this same connection, the Eighth Circuit rejected the
contention that it was improper to allow a lay witness, an account executive
with the GPS manufacturer, to testify concerning the operation of GPS, given
the witness’s training and experience demonstrating the device to
customers.  Brooks, 715 F.3d at
1078.  Accord United States v. Thompson,
393 Fed. Appx. 852, 858 (3d Cir. 2010), cert. denied, 562 U.S. 1262 (2011) (district
court properly allowed lay witness to testify as to functioning GPS device).             The undersigned finds these authorities to be persuasive,
and believes the Supreme Judicial Court will take judicial notice of the
reliability of GPS technology if and when presented with the issue.  The SJC has followed such a course in
analogous circumstances.  See, e.g.,
Commonwealth v. Whynaught, 377 Mass. 14, 17 (1979) (taking judicial notice of
radar speedometer as accurate and reliable means of measuring velocity);
Commonwealth v. LePage, 352 Mass. 403, 419 (1967) (stating that the capacity of
trained dogs to follow a human(s trail by scent has long been known).  Cf. Commonwealth v. Augustine, 2013 WL
5612574, at *1 n.2 (Mass. Super. Ct.) (noting that parties had agreed trial
court could take judicial notice of facts relating to cell site location
technology), vacated by Augustine, 467 Mass. 230 (2014).  Accordingly, the Court rejects the
Daubert/Lanigan challenge the Defendant has brought forward                                                             -4- in respect to the GPS
location data that the Commonwealth proposes to introduce at trial.               The Defendant’s alternative argument that introducing GPS
evidence would be cumulative (given that Mr. Lewis’s physical location at the
time of the crime is not in dispute), and that introducing such evidence would
implicitly taint him with unspecified prior bad acts, represents a closer
question for the Court.  It is true that
Mr. Lewis does not intend to present alibi evidence or otherwise contest his
presence at the scene of the crime.  This
would seem to invest GPS data concerning his physical location with limited
probative value.  That said, the
Commonwealth has every right to present a full narrative of how it came to
arrest and charge Mr. Lewis with the crimes at issue in this case, particularly
in light of the Defendant’s declaration that he intends to present a Bowden
defense.  For this reason, some amount of
cumulative evidence must be tolerated where the prosecution bears the burden of
proving the Defendant(s guilt beyond a reasonable doubt.              As for the speculation about prior bad acts and criminal
character that referencing a GPS device arguably invites, the Court is
confident that the jury can be provided with a limiting instruction that
effectively mitigates this risk.  See
Mass. G. Evid. c. 404(b), at 56 (2018 ed.). 
In its discretion to balance evidentiary relevance and prejudice,
therefore, the Court will not bar the Commonwealth from making reference to
data generated by the GPS device Mr. Lewis was wearing at the time of the
alleged crime. The Commonwealth will not, however, disclose the specific
reasons Mr. Lewis was wearing a GPS; and the jury will be instructed that
persons may wear such devices in a broad range of circumstances, and that any
GPS-based inference that the                                                             -5- Defendant has either a
violent character or propensity to crime is strictly forbidden. [2]  SO ORDERED. Robert B. Gordon, Justice of
the Superior Court October 23, 2018 --------------------------- [2]
The Court has reviewed the proposed limiting instruction suggested by the
Commonwealth in its Motion to Admit GPS Evidence, and believes that some
version of this mid-trial charge would be appropriate.  The Court invites comment from the Defendant
in this connection.                                                             -6-