NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-1187                                          Appeals Court

COMMONWEALTH  vs.  MARK W. SARGENT.


No. 19-P-1187.

Bristol.     May 5, 2020. – July 10, 2020.

Present:  Sacks, Singh, & Wendlandt, JJ.


Practice, Criminal, Revocation of probation.  Due Process of
    Law, Probation revocation.  Evidence, Authentication.
    Burning of Property.  Burning a Dwelling House.


    Indictments found and returned in the Superior Court
Department on March 1, 2013.

    A proceeding for revocation of probation was heard by
Thomas F. McGuire, Jr., J.


    Brad P. Bennion for the defendant.
    Robert P. Kidd, Assistant District Attorney, for the
Commonwealth


    WENDLANDT, J.  The evidentiary principle of authentication

requires the proponent of evidence to provide sufficient indicia

that the evidence is what it purports to be.  See Mass. G. Evid.

§ 901(a) (2020).  We address in this appeal the intersection

between authentication of a writing and the requirement in

probation revocation hearings that, consistent with due process, the evidentiary basis for a revocation decision be reliable. On appeal, the defendant, Mark W. Sargent, contends that, in order to ensure the reliability that due process requires, formal authentication procedures must be followed in a probation revocation proceeding. We disagree, and concluding that his other arguments lack merit, we affirm.

Background. In February 2014, the defendant pleaded guilty to charges stemming from arson of a building in 2013 (2013 arson).[1] After a term of incarceration, the defendant was placed on probation in October 2015. In October 2017, while still on probation, new charges were brought against the defendant based on arson of a building in Brockton (2017 arson). On the basis of the new charges, the probation department issued a notice of surrender, alleging the defendant had violated the condition of his probation requiring him to "obey all local, [S]tate, and [F]ederal laws and all court orders."

Based on the evidence presented at the probation revocation hearing, the judge could have found the following regarding the 2017 arson. In the early morning hours of October 4, 2017, the defendant set fire to a building, largely comprised of brick and

---

[1] The charges were burning of a building, pursuant to G. L. c. 266, § 2; arson of a dwelling, pursuant to G. L. c. 266, § 1; and six counts of burning personal property, pursuant to G. L. c. 266, § 5.

steel but including a wooden staircase.  Surveillance videos showed the defendant[2] arriving at the building in a dark-colored sport utility vehicle (SUV) at around 3:30 A.M.  The defendant, who wore distinctive black and white sneakers, got out of the SUV and poured accelerant from a container onto the building's wooden staircase.  He returned to the SUV and drove it out of the camera's view.  Returning on foot to the staircase, he lit the accelerant, thereby engulfing the stairs in flames.

Upon viewing the videos, State police Trooper Michael Fagan contacted State police Trooper Eric Derosiers, who was investigating the defendant; Trooper Derosiers, in turn, learned that, just a few hours before the arson, the defendant had been seen at a gasoline station located across the street from the used car dealership where he worked.[3]  Surveillance videos from the gasoline station showed the defendant driving a Toyota RAV 4 -- a dark-colored SUV similar to the one depicted in the surveillance video from the site of the 2017 arson.  At the gasoline station, the defendant filled a container with gasoline

---

[2] At the hearing, State police Trooper Michael Fagan, who was familiar with the defendant from prior investigations, identified the defendant as the individual in the video.

[3] A law enforcement team had already been engaged in a general investigation of multiple fires set in similar patterns, for which the defendant was a person of interest.

and placed it in the vehicle. The defendant wore the same distinctive black and white sneakers.

At the used car dealership, Trooper Derosiers observed a line of vehicles, each of which had condensation on the hood and windshield except for one -- a dark-colored Toyota RAV 4. The hood of the Toyota RAV 4 was warm, indicating it had been used recently. The defendant's supervisor told Trooper Derosiers that when the defendant arrived for work that day, he requested that the Toyota RAV 4 be detailed and cleaned. The defendant was arrested. He wore the same distinctive black and white sneakers.

During the police interview following his arrest, the defendant told Trooper Derosiers that "when it was all over, he wanted to come out and help counsel kids on fire setting and not to do it." The defendant "expressed being angry with his wife and that his method of relieving that was burning houses down." The defendant's probation file included a letter under the defendant's name, addressed to the defendant's former probation officer and referring to both the 2013 arson and the 2017 arson. Further details of the letter are discussed infra.

A Superior Court judge found the defendant in violation of probation, revoked his probation, and sentenced him to State prison.

Discussion. "In a probation revocation hearing, the issue to be determined is not guilt beyond a reasonable doubt but, rather, whether the probationer more likely than not violated the conditions of his probation." Commonwealth v. Kelsey, 464 Mass. 315, 324 (2013). Thus, we uphold a judge's finding of a probation violation if it is supported by a preponderance of the evidence. See id. at 324-325; Commonwealth v. Hill, 52 Mass. App. Ct. 147, 154 (2001). The decision to revoke probation, based on a violation shown by a preponderance of the evidence, lies within the discretion of the judge. See Commonwealth v. Durling, 407 Mass. 108, 111 (1990).

1. Authentication of handwritten letter. At the revocation hearing, the defendant's current probation officer offered a letter found in the defendant's probation file. On its face, the letter appeared to be sent by the defendant while incarcerated on the 2017 arson charges and awaiting the revocation hearing. It is addressed to his then-probation officer, John DeJesus. In the letter, the defendant discussed his involvement in the 2013 arson and the more recent 2017 arson of the "brick & steel" building. The return address on the envelope listed Plymouth County Correctional Facility, where the defendant was then being held, alongside his full name, identification number, and unit number. The defendant argues that due process required that the judge authenticate the letter

before admitting it in evidence, either by comparing it to a known handwriting sample of the defendant or by allowing a witness familiar with the defendant's handwriting to testify to its authenticity.  Instead, over the defendant's objection, the judge simply admitted it "for purposes of a surrender probation hearing."

Where evidence is not authentic,[4] it is irrelevant, and thus, it cannot be a reliable basis for revoking probation.  See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 307 (2019) ("Authentication represents a special aspect of relevancy in that evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims" [quotation omitted]).  Contrary to the defendant's contention, however, it does not follow that formal procedures for authenticating evidence must be followed in probation revocation hearings.  To the contrary, "standard evidentiary rules do not apply to probation revocation

---

[4] Authentication is a preliminary determination of fact, which a judge must make prior to admitting evidence.  Mass. G. Evid. §§ 104(b), 901(a) (2020).  See Gorton v. Hadsell, 9 Cush. 508, 511 (1852) ("It is also [the] province [of the judge] to decide any preliminary questions of fact, however intricate, the solution of which may be necessary to enable him to determine the other question of admissibility").  In particular, a judge determines whether there is sufficient indicia that, if believed, "would allow a reasonable [fact finder] to conclude that [the] evidence is what its proponent claims it to be." Commonwealth v. Purdy, 459 Mass. 442, 449 (2011).

hearings." Durling, 407 Mass. at 117. While due process necessitates certain minimal requirements at probation revocation proceedings,[5] it does not "require that the [government's] significant interests in informality, flexibility, and economy [at such proceedings] . . . be sacrificed" (citation omitted). Id. at 113. In determining the requirements of due process in connection with the evidence used at probation revocation hearings, the Supreme Judicial Court has identified "[t]wo overriding principles": first, "revocation proceedings must be flexible in nature," and second, "all reliable evidence should be considered." Id. at 114. Both principles "are furthered by not imposing strict evidentiary rules on probation revocation hearings." Id. The probation revocation "process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. 471, 489 (1972). The "preeminent concern with respect to the evidence presented and considered at revocation proceedings is its reliability." Commonwealth v. Thissell, 457 Mass. 191, 196 (2010). Cf. Durling, supra at 117-118 ("The proper focus of inquiry in . . . situations [where the Commonwealth seeks to rely on evidence not subject to cross-

---

[5] See Durling, 407 Mass. at 113 (listing minimum due process requirements).

examination] is the reliability of the evidence presented. . . . When hearsay evidence _is_ reliable . . . it _can_ be the basis of a revocation").

In assessing the defendant's claim that procedural formality is required, we are guided by the Supreme Judicial Court's analysis in Thissell.  In that case, as part of his probation conditions, the probationer was required to wear a global positioning system (GPS) device and stay away from certain "exclusion zones" surrounding his wife's home and place of employment.  Thissell, 457 Mass. at 192.  Although the probation department did not formally "authenticat[e] . . . the generative process that created the [GPS] records," the court held that the GPS data bore sufficient indicia of reliability[6] "to serve as the basis of the defendant's revocation consistent with the requirements of due process."  Id. at 197 & n.13 ("The process by which the GPS records at issue here were created is not fully apparent . . . .  In any event . . . we conclude that the judge did not err in relying on them in this proceeding . . . .").[7]

---

[6] In particular, the court relied on the level of factual detail of the GPS records, how close in time they were made to the events in question, and the reliance by the probation department on such records to track probationers.  See Thissell, 457 Mass. at 197 n.13 & 198.

[7] Similarly, the United States Court of Appeals for the Ninth Circuit held, in United States v. Miller, 514 F.2d 41, 43

Similarly, in the present case, due process does not require formal processes of authenticating the handwritten letter, such as by comparing a known writing sample with the letter or testimony by someone familiar with the defendant's writing. The letter bore sufficient indicia of reliability to permit reliance on the letter in connection with revoking the defendant's probation. The defendant's current probation officer testified that he found the original letter in the defendant's probation file. The letter, signed in the defendant's name, was addressed to the defendant's original probation officer. The letter discussed by name the defendant's appointed counsel, and the 2013 arson. It also noted that the 2017 arson -- which led to the revocation hearing -- was of a "brick & steel" building. It also referred to a specific counselor who had been assigned to him. In the file, the letter was accompanied by an envelope with a return address of Plymouth County Correctional Facility, followed by the defendant's full name, identification number, and unit number. The envelope was postmarked April 2018, during which time the defendant was being

---

(9th Cir. 1975), that copies of State court criminal records, even though not authenticated, were properly relied on to revoke the defendant's probation. The probation officer testified to making the copies and to obtaining the information from court files. Id. at 42. "The unrefuted evidence presented at the hearing . . . was reliable and obviously sufficient to satisfy the court that appellant had violated the terms of his probation." Id.

held at Plymouth County Correctional Facility. Given these circumstances, the judge did not err in finding that the letter was reliable, and that the lack of other formal authentication processes for identifying the defendant's handwriting did not deprive the defendant of due process.[8]

2. Preponderance of the evidence. The defendant also challenges the sufficiency of the evidence that he violated the terms of his probation by committing the crimes of burning a building and personal property. At a probation revocation hearing, the Commonwealth must prove by a preponderance of the evidence that the defendant violated a condition of probation. See Commonwealth v. Holmgren, 421 Mass. 224, 226 (1995).

The evidence and reasonable inferences therefrom supported the following. Hours before the building fire, the defendant borrowed a Toyota RAV 4 from the car dealership where he was employed, drove it to the gasoline station across the street,

---

[8] Moreover, contrary to the defendant's contention, a handwriting comparison is not the only method of authenticating a letter; instead, it may be authenticated through "distinctive characteristics," including "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Mass. G. Evid. § 901(b)(4) (2020). See Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011); Purdy, 459 Mass. at 449-450 (relying on confirming circumstances to authenticate handwritten letter identifying defendant as author). Accordingly, the letter was "admissible under standard evidentiary rules, [and thus] it is presumptively reliable." Thissell, 457 Mass. at 196.

and filled a container with gasoline.  Around 3:30 A.M., he arrived at the crime scene and poured gasoline from the container onto the wooden staircase.  He moved the SUV out of harm's way and then lit the fire.  Upon returning to the dealership, he asked that the SUV be detailed and cleaned in an attempt to cover up the arson.  After his arrest, he expressed remorse, indicating that he would "help counsel kids on fire setting and not to do it."  While incarcerated and awaiting his probation revocation hearing, he wrote a letter to his probation officer seeking help and minimizing the 2017 arson.  In short, there was ample evidence that the defendant "more likely than not violated the conditions of his probation" by committing the 2017 arson.  Kelsey, 464 Mass. at 324.

Order revoking probation
affirmed.